#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DALLAS MCINTOSH, #B85114** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17−cv–0103−NJR |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **NANCY KEEN,** | ) | |
| **JANA REUTER,** | ) | |
| **DEBRA HALE,** | ) | |
| **BARBARA RODRIGUEZ,** | ) | |
| **NURSE PAULA,** | ) | |
| **BRITTANY FORTAG,** | ) | |
| **ST. CLAIR COUNTY,** | ) | |
| **RICHARD WATSON,** | ) | |
| **PHILIP MCLAURIN,** | ) | |
| **NANCY SUTHERLIN,** | ) | |
| **DANTE BEATTIE,** | ) | |
| **MIKE RIPPERDA,** | ) | |
| **THOMAS MESEY,** | ) | |
| **CHRIS LAZANTE,** | ) | |
| **MATTHEW GREEN,** | ) | |
| **RICHARD REED,** | ) | |
| **COREY HARRIS,** | ) | |
| **JON KNYFF,** | ) | |
| **C/O COMPTON,** | ) | |
| **PATRICK FULTON,** | ) | |
| **NICOLE LEIBIG, and** | ) | |
| **STEVE STRUBBERG,** | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Dallas McIntosh, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff claims the defendants were deliberately indifferent to his serious medical issues and failed to

1

protect him from harming himself during his time at St. Clair County Jail, in violation of the Fourteenth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: at all relevant times, Plaintiff was a pre-trial detainee in custody at the St. Clair County Jail. (Doc. 1, p. 2). On or about October 10, 2013, Plaintiff was transported to the St. Clair County Jail from St. Louis University Hospital to await trial. (Doc. 1, p. 5). Plaintiff was listed in poor physical condition

because he had recently had surgery for gunshot wounds, had upwards of twenty surgical staples in his abdomen, had a drain attached to his body, was urinating blood, and was forced to depend on a walked and wheelchair for mobility. *Id.* Because of these medical issues, Plaintiff was housed in the infirmary under the care of nurses and assigned correctional officers. *Id.* Plaintiff suffered great physical pain and discomfort during this time, and he was also severely depressed and stressed. (Doc. 1, p. 6).

On February 8, 2013, Plaintiff's bunk and property were searched, and a corrections officer discovered a suicide note, which was addressed to Plaintiff's friends and family members; in it, Plaintiff expressed the intent to end his life. *Id.* Plaintiff was then moved to the suicide watch room and placed in a suicide restraint chair. *Id.* Nurse Nancy Keen was on duty when the suicide note was discovered, and she was personally responsible for securing Plaintiff in the restraint chair and checking the restraints. *Id.* McLaurin also was aware of Plaintiff's circumstances and personally informed Plaintiff's family of the note. (Doc. 1, p. 7). Plaintiff was eventually released from suicide watch to his previous housing in the infirmary. *Id.*

In the days immediately following Plaintiff's return to the infirmary, Keen began to give a variety of prescription pills to Plaintiff during the times she was responsible for dispensing pills to the other detainees, as well as on other occasions. *Id.* Keen instructed Plaintiff on how to take the pills with respect to which pills, in what combinations, and at what time. *Id.* Keen told Plaintiff the pills would make him feel better. *Id.* These pills likely included sleeping pills, anxiety and depression pills, pain killers, and opioids. (Doc. 1, p. 8). Plaintiff became heavily addicted to the medication, so Keen gave him more pills in greater strengths and provided him with excess pills so that he could last between her shifts. *Id.* This occasionally included several days-worth of pills at once being given to Plaintiff. *Id.* Keen suggested Plaintiff put the pills up,

or conceal them from the correctional staff, when she gave him extra. *Id.*

During the first six weeks of Plaintiff's prescription pill regimen, Plaintiff frequently experienced excruciating headaches, severe stomach pain, diarrhea, cramps, and nausea, which caused him to violently vomit, sometimes with blood, leaving his throat and esophagus painfully raw. *Id.* Plaintiff felt feelings of confusion, grief, depression, sadness, and anger; he also suffered mood swings and had increased and constant thoughts of suicide. *Id.* Plaintiff slept 16-18 hours per day in a state of narcosis, to the point where McLaurin, on at least one occasion, asked the other detainees if Plaintiff was "even alive." (Doc. 1, pp. 8, 14). Plaintiff missed 2-3 meal trays per day due to his drowsiness and the medicine's suppression of his appetite. (Doc. 1, p. 8). Plaintiff suffered abrupt weight loss, causing him to be placed on a high-calorie diet by the jail physician. (Doc. 1, p. 9). Plaintiff was kept in this drug-induced state, completely addicted to the medication, for almost six consecutive months. *Id.* The corrections officers assigned to the infirmary witnessed Plaintiff's behavior, and instead of assisting him, eventually stopped trying to wake Plaintiff up during meal times and gave away his meal trays to other detainees. *Id.*

On August 4, 2013, a shakedown of the infirmary supervised by Lieutenant Nancy Sutherlin took place. *Id.* Corrections Officer Chris Lazante searched Plaintiff's bunk and possessions and discovered multiple bundles of various pills, including Trazedone, Lortab, Phenegren, and Tramadol. (Doc. 1, pp. 9-10). In total, 55 prescription pills were located in Plaintiff's property. (Doc. 1, p. 10). Nurse Barbara Rodriguez examined the pills and advised Sutherlin that Plaintiff was not prescribed any of them, nor were some of them from the Wexford formulary. *Id.* Keen and Rodriguez, the on-duty nurses at the time the pills were discovered, did not screen Plaintiff for suicidal ideation at this time. *Id.* Instead, McLaurin ordered Plaintiff be placed in punitive segregation, so Sutherlin, Lazante, Beattie, and Fulton moved him to cell

block "F-Max" into a cell that was not suicide-proof. (Doc. 1, pp. 10-11, 14). These defendants allowed Plaintiff to keep his mattress from the infirmary, which contained another bundle of pills. (Doc. 1, p. 11). Plaintiff immediately sent a grievance explaining that he was given the pills over a period of several months. *Id.* Plaintiff also requested to speak to someone. *Id.*

Plaintiff could not think straight given he was still affected by the pills. *Id.* He became increasingly depressed as the evening wore on, so he took more pills and started to contemplate suicide. *Id.* Plaintiff took the rest of the 10-15 pills and attempted to hang himself using a sheet as a rope. *Id.* The sheet came loose, causing Plaintiff to fall and strike his head on the bed frame and floor. *Id.* His head ached, his vision blurred, and he was very dizzy from the fall. *Id.* Plaintiff began to vomit violently, felt chest pains, and struggled to catch his breath. *Id.* Plaintiff then lost consciousness for several hours. *Id.* The assigned officers failed to regularly monitor or conduct a wellness check of Plaintiff during this time, which would have revealed that Plaintiff was unconscious. (Doc. 1, p. 16). Plaintiff believes the pills influenced him to attempt to overdose and hang himself, as he had never taken any actual, physical steps toward suicide before taking them. (Doc. 1, p. 12).

Several days later, Steve Strubberg informed Plaintiff that he was under criminal investigation concerning the pills that were discovered with his property. *Id.* Strubberg also told Plaintiff that he and the other defendants, given the discovery of the pills, realized why Plaintiff had been sleeping all the time and barely eating. *Id.* Plaintiff told Strubberg the situation was not his fault and that he wanted to file a grievance, but Strubberg told him that the first step in the grievance process would be the completion of the criminal investigation. (Doc. 1, pp. 12-13). Without medication, Plaintiff began to suffer from withdrawal symptoms, including panic attacks, profuse sweating, vomiting, diarrhea, headaches, and urinating in his sleep. (Doc. 1,

p. 13). Plaintiff also suffered alternative feelings of stress, anger, sadness, depression, fear, and anxiety. *Id.* This caused Plaintiff to have stomach pain and queasiness, feelings of weakness, emotional fatigue, nervousness, trembling, and paranoia. *Id.*

Plaintiff claims that, despite the higher rate of suicides in jails than among individuals in the general population, St. Clair County has no formal policies or procedures with respect to suicide prevention, leaving jail employees without the training or resources needed to sufficiently monitor and protect detainees who are at risk of suicide. (Doc. 1, pp. 14-15). Plaintiff notes, however, that St. Clair County Jail employees do take one eight hour course on the subject. (Doc. 1, p. 15). Plaintiff also claims that Wexford Health and St. Clair County Jail's administration have failed to implement a policy of keeping count of prescription medication to ensure medications are only distributed in appropriate amounts to inmates who have prescriptions. *Id.* Plaintiff further alleges that the employees of the jail are not adequately trained in the handling of prescription medications—as they only take a single one-hour course on the subject. *Id.* As proof, Plaintiff offers the names of several detainees who lost their lives due to suicide while at St. Clair County Jail, and he alleges that suicide-prevention rooms are unavailable to inmates who need them because corrections officers use them to privately assault detainees. (Doc. 1, p. 17). Sheriff Richard Watson is allegedly aware of all of this and, instead of remedying it, has turned a blind eye and deliberately failed to take action to resolve these issues. *Id.* According to Plaintiff, this lack of procedures, regulations, policies, and adequate training caused his injuries and resulted in the violation of his rights. (Doc. 1, p. 15).

Plaintiff also alleges that in October 2014, Keen was caught providing non-prescribed pills and contraband to another detainee, at which point she was investigated, fired, and banned from St. Clair County Jail. (Doc. 1, p. 18). Plaintiff claims that, during the investigation, Keen

confessed to having supplied the pills found in Plaintiff's possession on August 4, 2013. *Id.* Plaintiff claims that Wexford failed to provide adequate training and supervision to its medical and mental health care staff at the jail and also failed to adequately screen the nurses prior to hiring them. *Id.* He believes Keen was a recreational prescription pill user, as was at least one other Wexford nurse who was terminated for abusing the prescription medication under the medical staff's control. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to designate the following three counts in this *pro se* action. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 –** The individual defendants were deliberately indifferent to Plaintiff's serious medical needs and failed to protect Plaintiff from attempting to commit suicide and becoming addicted to non-prescribed prescription drugs in violation of the Fourteenth Amendment.
>
> **Count 2 –** Wexford Health showed deliberate indifference to Plaintiff's serious medical needs by having a policy of providing inadequate suicide prevention and prescription handling training to employees, failing to supervise employees and fully vet candidates during the hiring process, and failing to maintain procedural safeguards to monitor prescription pills at St. Clair County Jail in violation of the Fourteenth Amendment.
>
> **Count 3 –** St. Clair County and Richard Watson, in his official capacity as St. Clair County Sheriff, espoused a policy of deliberate indifference toward inmates, including Plaintiff, by failing to provide training and supervision of employees to handle suicide-risk inmates and prescription medication and allowing an "unwritten policy" of employees mishandling suicide-risk detainees in violation of the Fourteenth Amendment.

As discussed in more detail below, Counts 1, 2, and 3 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered

dismissed with prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1

It is well established that, while in the custody of state or local authorities, a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, (1983); *Payne v. Churchich*, 161 F.3d 1030, 1040-41 (7th Cir. 1998). These due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. *See Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *Estate of Cole v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir.1996). Consequently, when considering a pretrial detainee's claim of inadequate medical care, for example, it is appropriate for a court to look to the analogous standards of Eighth Amendment jurisprudence. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Thus, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something

8

less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

"An objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)) (quotation omitted). Suicide, attempted suicide and other acts of self-harm clearly pose a "serious" risk to an inmate's health and safety, and may provide the foundation for deliberate indifference to medical needs and failure to protect claims. *See Collins*, 462 F.3d at 760 (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)); *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies."). At the same time, courts have recognized that "[s]uicide is inherently difficult for anyone to predict, particularly in the depressing prison setting." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Collignon v. Milwaukee Cty.*, 163 F.3d 982, 990 (7th Cir. 1998) ("No one can predict suicide with any level of certainty[.]"). Where the harm at issue is a suicide or attempted suicide, deliberate indifference requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." *Collins*, 462 F.3d at 761 (citations omitted).

Notably, 42 U.S.C. § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). Correspondingly, a Section 1983 plaintiff must make allegations that associate

specific defendants with specific claims, so the defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Plaintiff has made specific allegations sufficiently tying defendants Keen, McLaurin, and Rodriguez to his failure to protect and deliberate indifference to medical needs claims, at least at this stage. Plaintiff's risk for suicide constituted a serious risk to his health and safety and therefore satisfies the objective component of Plaintiff's claims. The subjective component was also satisfied with respect to these three defendants. Both Keen and McLaurin were present for and/or aware of the discovery of Plaintiff's original suicide note. Both were also present for and/or aware of the discovery of the pill bundles with Plaintiff's personal property later on. Keen allegedly illegally provided Plaintiff with the pills he became addicted to and ultimately attempted to overdose with. McLaurin, though he was not necessarily aware Keen had given Plaintiff the pills, was aware that Plaintiff had been deemed a suicide risk in the past, had commented on Plaintiff's extreme lethargy after he came off of suicide watch, and knew Plaintiff was discovered with bundles of pills after all that. Despite this knowledge, McLaurin ordered Plaintiff be housed in punitive segregation, where Plaintiff's cell was not suicide-proof. Rodriguez was also allegedly on duty when the pill bundles were discovered, noted that Plaintiff had not been prescribed any of the pills, and was aware that Plaintiff had threatened suicide before. Instead of screening Plaintiff for suicidal ideation, Rodriguez allegedly did nothing. Plaintiff has therefore stated a claim under Count 1, at least at this stage, against Keen, McLaurin, and Rodriguez.

Plaintiff's Complaint is devoid of specific allegations sufficiently linking the remaining individual defendants to violations of Plaintiff's constitutional rights. Though Plaintiff makes

general claims that "defendants knew Plaintiff was a suicide risk" and "failed to take any measures to monitor and protect him," these claims are not supported by any more specific facts and instead appear to be mere conclusions. (Doc. 1, pp. 13, 16). Plaintiff and many other inmates seem to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Judge Easterbrook stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595.

Plaintiff's desire to hold Sheriff Watson liable for the actions of his subordinates under a theory of respondeat superior therefore must fail, as such a theory does not apply to § 1983 actions. Further, because there is no indication the remaining individual defendants caused or

participated in the constitutional violations alleged in Count 1, Count 1 will not proceed against any defendants other than Keen, McLaurin, and Rodriguez.

### Count 2

A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has alleged that at least two of the individual defendants (Keen and Rodriguez) either acted or failed to act as a result of an official policy espoused by Wexford Health Sources of failing to train employees in suicide prevention and in the proper handling of prescription medication and failing to implement procedures to control the outflow of prescription medications. Plaintiff Keen also had access to Plaintiff despite her various alleged shortcomings due to an alleged practice of Wexford of failing to adequately screen applicants for employment. Therefore, Plaintiff's claims under Count 2 against Wexford Health Sources cannot be dismissed at this stage.

### Count 3

Governmental entities and officials cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "The 'official policy' requirement for liability under § 1983 is to 'distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir.

2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). *See also Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.'" (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007))). "A governmental body's policies must be the moving force behind the constitutional violation before we can impose liability under *Monell*." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010).

Construing the Complaint liberally, Plaintiff has alleged a St. Clair County policy, perpetuated by Watson in his official capacity as Sheriff, of undertraining employees in suicide prevention and the handling of prescription medications and turning a blind-eye to employee mistreatment of suicide-risk detainees. Plaintiff claims this resulted in his suicide attempt and harmful addiction to prescription drugs. Count 3 against St. Clair County and Watson therefore cannot be dismissed at this stage.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **KEEN**, **RODRIGUEZ**, and **MCLAURIN**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **WEXFORD HEALTH SOURCES**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **ST. CLAIR COUNTY** and **WATSON** (official capacity). This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **REUTER, HALE, PAULA, FORTAG, SUTHERLIN, BEATTIE**, **RIPPERDA**, **MESEY**, **LAZANTE**, **GREEN**, **REED**, **HARRIS**, **KNYFF**, **COMPTON**, **FULTON**, **LEIBIG**, and **STRUBBERG** are **DISMISSED** without prejudice because the Complaint fails to state a claim for relief against these defendants.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** through **3** the Clerk of Court shall prepare for **KEEN**, **RODRIGUEZ**, **MCLAURIN**, **WEXFORD HEALTH SOURCES**, **ST. CLAIR COUNTY**, and **WATSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 21, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**