UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH, #B-85114
   Plaintiff,

V.

         Case No. 17-cv-00103-JPG-DGW

NANCY KEEN, et al.
    Defendants,

PLAINTIFF'S DECLARATION IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

DALLAS MCINTOSH states:

1) I am the Plaintiff in the above-captioned case. I hereby make this declaration in opposition to each of the Defendants' (i.e., Keen, Rodriguez, & Wexford Health Sources, Inc.) motions for summary judgment on my claims (i.e., Counts 1-3) that they were deliberately indifferent to my serious medical needs, failed to protect me from becoming addicted to non-prescribed prescription drugs, and from attempting to commit suicide. (Doc. 9, p. 7; Docs. 61 & 89)

2) The Defendants' motions for summary judgment claims, in summary, that I have failed to exhaust administrative remedies regarding my claims against them, as is required by the Prison Litigation Reform Act (42 U.S.C. § 1997e(a)). In support of their motions, the Defendants falsely claim that I did not ever file any

Captain's requests or Grievances regarding my allegations in the civil complaint against them, and therefore have failed to exhaust. Further-more, the Defendants have cited a 'record' of 'Captain's request' and 'Detainee Grievance Forms' that they obtained by subpoena from the St. Clair County Jail, which they present as being an indis-putably complete record of all such complaints filed by me so as to argue that because such record does not contain complaints related to the issues alleged against them that therefore none was ever submitted (Doc. 62, pp. 2-4, 6-8, attached Exhibit D); (Doc. 70, pp. 4-7)

3) The Defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying Statement of Disputed Factual Iss-ues filed by Plaintiff pursuant to SDIL-LR 7.1(e) of this District Court. The facts and supporting exhibits are set out in this declaration. Furthermore, this declaration has been written to clarify the ambiguous and vague factual pleadings relating to exhaustion that were in my civil complaint — wherein I merely gave a brief, generalized, but yet incom-plete account of the facts & circumstances under which I took steps to exhaust administrative remedies — by providing a specific and detailed account of the circumstances underlying the specific steps I took to exhaust the administrative remedies made 'available' to me and how I was led by jail authorities to believe those steps were satisfactory and in compliance with the jail's grievance procedure as it applied to grieving about matters into which there was an underlying & on-going investigation

4) On August 4, 2013, a shakedown-search of the St. Clair County Jail's infirmary unit took place. I was housed in the infirmary at that time and a search of my property by correctional officer ("c/o"

Lanzante revealed a total of 55 prescription pills for which I had no prescription, along with other contraband (i.e. cigarettes, lighters, rolling papers). Both the pills and contraband had been illegally provided to me by Defendant Keen, who over the previous 6-months had continually provided me with such medication which had caused me to develop an addiction and to exist in a state of constant & perpetual narcosis and dependency.

5) Upon being notified of the discovery of the medication and contra-band, Defendant Superintendent Philip McLaurin — already aware that I was a suicide risk detainee — ordered Lt. Nancy Sutherlin to place me into punitive segregation, where the cells were not suicide proof. Pursuant to McLaurin's orders, I was placed into the Maximum Security Housing unit (i.e. segregation, F-max, cell #7) without being screened for suicidal ideation by either Defendant-nurses Keen or Rod-riguez — both of whom were aware that Plaintiff had threatened suicide in the past and that I had been discovered with the mass of prescription medication for which I had no prescription on 8/4/13. In being reloc-ated to segregation, I was allowed to keep my remaining possessions including my matress from the infirmary which contained another bun-dle of pills hidden inside of it.

6) Upon being re-housed in segregation, I immediately completed a formal "St. Clair County Sheriff's Department Request-Complaint Form" — which is referred to in the jail's "Detainee Rules and Regul-ations" handbook as a "Captains request" and which is sometimes cas-ually and commonly referred to by detainees and C/O's as simply a "griev-ance", although it is not actually the formal "Detainee Grievance Form" referenced in the handbook as the form to be submitted after a

Captains request has been submitted.

7) Among the issues that I complained of in the formal 'Captains request', was that the pills found amongst my property had been continuously provided to me over the previous 6-months by a "nurse", and had initially caused me to become physically sick & emotionally unbalanced to the point of contemplating suicide, before causing me to become addicted, mentally incapacitated, drowsy, and constantly dazed and confused; that the nurses who were on duty when the pills were discovered (i.e., Defendants Keen & Rodriguez) had allowed me to be placed in segregation without even bothering to screen me for medication dependency, withdrawal, or determining whether I was suicidal, although they both knew that I had threatened suicide before and that I had just been caught with a load of unprescribed prescription pills; that I did not feel well and would get sick from withdrawal without the medication; and that I had more pills inside of my mattress that I did not trust myself with and I wanted to be immediately released from segregation.

8) At the time that I hastily completed the 8/4/13-formal 'Captains request', my thoughts were clouded and jumbled from lingering effects of the illegal medication and the fact that I had just been asleep and caught off-guard by the sudden shakedown, and I was nervously fran-
-tic at having been placed in segregation as I had never been housed under the conditions of segregated confinement before, and wanted out.

9) I turned in that formal 'Captains request' form the same day (i.e., 8/4/13) to C/O Dante Beattie of the same workshift that had con-
-ducted the shakedown of the infirmary and discovered the pills, upon

getting his attention as he walked through the 'F-Max' segregation cell block to conduct the jail's standard 30 minute interval patrol of the unit. *I made brief reference to submitting this formal 'Captains request' in paragraph #33 of my civil complaint, wherein I inadvertantly referred to the 'Captains request' form as simply "a grievance" in making casual mention and description of it; yet I later clarified the exact type of complaint-forms that I had initially submitted, in paragraphs #37-38 wherein I recounted Sgt. Steve Strubberg's statement — in reference to the earlier complaint forms I had submitted — that I would be given "another Captain's Request form." (Doc.1, pp. 11 & 13) (*Added Emphasis)

10) Furthermore, it was the fact that I had given the formal 'Captains request' — which provided notice that I was imminently vulnerable & susceptible to risk of suicide and needed help — to C/O Beattie who had a duty to review it and take appropriate action, but who ultimately did nothing about it, that was the subjective basis for my attempt to initially name him as a Defendant in this action, so as to state a claim against him for 'deliberate indifference'; although he was ultimately dismissed as a Defendant for my failure to provide "specific allegations sufficiently linking" him and other "individual defendants to violations" of my "constitutional rights". (Doc.1, pp. 1, 4, 11 & 16; Doc.9, pp. 10-11)

11) Upon submitting the formal 'Captains request' to C/O Beattie, I then asked him to bring me both, a Detainee Grievance Form and a "sick call slip" (i.e, a St. Clair County Sheriff's Department Health Services Request Form); whereupon C/O Beattie responded that he could not "just give" me a Detainee Grievance Form as the forms were being kept

in the locked offices of Superintendent McLaurin & Asst. Superinten-dent Thomas Trice, and that I had to "hear something back from the administration" and get a reply to my "Captain's request" "be-fore" I could be given the Detainee Grievance Form. C/O Beattie returned moments later with the "sick-call slip." Thus, based on C/O Beattie's representation of the process to be followed, I was led to believe that I had to await a response from the adminis-tration to my "Captains request" before I could obtain a Detain-ee Grievance Form. I kept the "sick call slip" and did not immed-iately fill it out.

12) After my failed suicide attempt, which I believe occurred between 11:30 pm. and 1:00 a.m. that same night (8/4/13), as there is no clock in segregation, I subsequently regained conscious-ness in the early afternoon of August 5, 2013.

13) After several of my requests for another formal "Captains re-quest" were ignored, I drafted my own handwritten-"Captains re-quest" complaint on lined paper as a "follow-up" to the formal "Captain's request" that I had written & submitted the day be-fore. In this "follow-up" complaint, I referenced everything I had complained of the day before and emphasized that I believed my previous "Captains request" had either been destroyed or ignored, as nobody had come to speak with me. Yet I went on to explain that I had injured myself in the failed suicide attempt that I believed had happened as a result of the effects the medication had had on my mind; I again requested to be seen by a doctor, nurse, and mental health counselor; and I again protested against being kept in segregation, asking to be immediately released from there. I

then filled out the 'sick-call slip' that I had previously obtained, anticipating that I would need for the symptoms of withdrawal I knew I would begin to suffer, and instead used it to request med-ical attention for the injuries I suffered in the suicide attempt and to request to be seen by a mental health counselor.

14) Both, the handwritten 'Captains request' & the 'sick-call slip' were placed into the bars of my cell and collected by correctional staff that night, along with the rest of the mail that they routinely collect at night. As of 8/4/13, 8/5/13, or afterward, neither a nurse or mental health professional ever came to see me as a result of the complaints or the 'sick-call slip' I submitted. * I made par-ticular mention of my handwritten 'follow-up' 'Captains request' com-plaint as the "follow-up letter" I mentioned in paragraph #37 of my civil complaint in this action. (Doc. 1, p. 12)

15) On or about August 6, 2013, I was summoned and escorted to the office inside of the jail's chapel to speak with Sgt. Steve Strubberg for what I initially thought would be solely about the complaints I had written. Upon meeting Strubberg in the chapel-area itself, I immediately asked him if he had either seen or if he was in receipt of my 'Captains request' complaints, whereupon Strubberg told me that he was in possession of "everything" but that he needed to speak with me about "other matters" first.

16) Strubberg then led me into the corner-office of the chapel, which had been set up with camera-recorder and a monitor on which I could see myself in 'real-time'. At that point, Strubberg informed me that our discussion would be formally recorded and he then act-

-ivated the recording devices. In the camera-recorded interview, Stru-bberg then informed me that I was officially the subject of a crim-inal investigation concerning the 8/4/13-discovery of the contra-band and prescription medication found among my property. He fur-ther advised me that I was facing a possible "class 4 pharmaceutic-al charge", and he then read me my Miranda-rights before proceedin any further. At that point, I exercised my right to remain silent and I declined any further discussion without the presence of an att-orney and Strubberg then officially ended the formally recorded interview. This video footage is kept by the St. Clair County Jail.

17) As he walked me out of his office and back into the chapel-area, Strubberg suddenly told me that we were now "off the record." He handed me some papers, which turned out to be xerox copies of both (formal/handwritten "follow-up") 'Captains request' complaints and the 'sick-call slip' I submitted on 8/4/13 & 8/5/1. pointed to them as I was thumbing through them, and then told me that he, other C/O's, and the Superintendent (i.e. McLaurin) had long been observing my unnatural eating and sleeping habits and had indeed suspected that I was possibly laboring under a drug-induced influence. He then said that based upon the quantity and var-iety of the contraband; the fact that he knew for certain that the pills had come from the nurses station & formulary; his own invest-igative experience in finding contraband; and the contents of my 'Captains request' complaints wherein I had repeatedly stated that the pills & contraband had been given to me by a "nurse", that he in-fact did believe that one of the nurses was the source of all the contraband. Then, repeating again that we were speaking "off the record," Strubberg pressured me to identify the individual nurse

responsible for giving me the pills and contraband, so that he could have that person "fired, arrested, and have their ass on the news."

18) Taking heed of Strubberg's previous warning that I was vul-nerable to criminal charges and also believing that the entire "off the record" scenario was possibly a trick to get me to inad-vertantly rescind my previously-asserted Miranda rights, I refused to cooperate with him any further with respect to identi-fying that it had been Defendant Keen who had been the source of all the pills and contraband discovered on 8/4/13 and provided to me over the preceding 6 months.

19) However, I seized upon Strubberg's reference to the content of my 2 'Captains requests' — the copies of which he had just given me — to redirect the conversation back to my complaints by ask-ing Strubberg if he had already reviewed them. Strubberg told me that not only had he seen and read my complaints, but that he was in possession of the originals due to the investigation that was underway and that the complaints were part of the investigation.

20) I stressed to Strubberg that my 'Captains request' complaints explained everything that had happened over the past 6 months re-garding the medication that had been discovered; that I needed to be released from segregation immediately; that I needed to have my 'Captains requests' heard and answered because I wanted to file a 'Detainee Grievance Form' about everything that had happened — including how the medication caused me to attempt suicide — and was being told that I could not obtain a 'Detainee Grievance Form' until I got a response to the 'Captains request' complaints; and

that I needed to complete and submit a 'Detainee Grievance Form' because I was going to file a lawsuit if that was what I had to do to get out of segregation (i.e., at the time I was not being told how long I was to stay in segregation; but that the stay was "indef- -inite" as I was listed as being on "administrative lockdown" in the computer). I, then specifically asked him what did he plan to do about all the issues in my complaints and when would I get a response back from someone. *I made mention of seeking to "file a grievance" (i.e., Detainee Grievance Form) "about everything" in para- -graph #37 of my civil complaint wherein I casually referred to the form as "a grievance" while also mentioning that I had already completed the 2 formal & handwritten 'Captains requests' as descr- -ibed in paragraphs #6-14 of this declaration. (Doc.1, p.12)

21) Strubberg responded by first reassuring me that the repres- -entation made by C/O Beattie had been "right" — that I couldn't receive or submit a "Detainee Grievance" until I had first gotten an administrative response to the "Captains requests" I had sub- -mitted, to give the administration a "chance to resolve the issue before going forward with the grievance." But more importantly, Strubberg reiterated to me that I was under "criminal investigation" and that in that "kind of situation" — where such an investigation was underway — that "the first step in the grievance process is to let the investigation be completed." Strubberg went on to explain that the reason for awaiting the completion of the investigation was because until the investigation was done, the supervisors and admin- -istration would not know enough of the facts involved so as to be able to provide a meaningful response to my issues, and that they could not speak on facts underlying an pending investigation.

22) Strubberg went on to tell me that once the investigation was completed that he would notify me of its completion, but that I might also be charged with a crime at that time as well. However, Strubberg told me that in either case — whether I only recieved notice of the completed investigation or was charged with a crime as well — that my original 'Captains requests' would be "considered" and given a response, or that I could even complete and submit another 'Captains request' form within the standard 24 hours allowed for submitting a complaint, after I was notified of the completed investigation. (See Doc. 1, pp. 12-13, ¶.38)

23) I then asked Strubberg about how long would the investigation take, and I stressed to him the seriousness of the issues in my 'Captains request' complaints, my need to recieve responses to them and get a 'Detainee Grievance', and my need to be immediately released from segregation because I felt prone to suicide in that cell.

24) Strubberg answered me by casting doubt on the legitimacy of my "sick-call slip" and as to whether there had really been a suicide attempt as described in my 'Captain's requests.' He said that I "looked fine" to him and that none of the officers reported "anything like that." Strubberg then suggested that I was likely lying about the suicide attempt in order to get out of segregation and he warned me that if I kept "playing the mental card" that I would be housed in the "naked-room" (i.e., Suicide-watch room) for the rest of whatever time I was to spend in segregation.

25) Finally, I asked Strubberg specifically if there was anything else "I need to do in the meanwhile to make sure I follow the griev-

-ance procedure all the way through to the end?" Strubberg replied, "you're doing it" and "we've got all your issues in these Captains re--quests, but like I've said, none of them will be addressed until the investigation is over because they all stem from the discovery of those pills and we don't know what's really going on yet." Strubberg then ended the conversation by saying "so just let the investigation be completed ... that's the first step."

26) Strubberg then personally escorted me back to the 'F-max' segregation unit, allowing me to keep the copies of my unanswered 'Captains requests' that I had submitted on 8/4/13 & 8/5/13, as well as the copy of my 'sick-call slip' — which was a common pract--ice with regard to copies of 'Captains request' forms, prior to same--time in late year of 2014. * The copies of the formal 'Captains req--uest', the handwritten follow-up 'Captains request', and the 'sick-call slip' — as described and referenced throughout this instrument & provi--ded to me by Sgt. Steve Strubberg — are attached to this declaration as Exhibits A, B, and C, respectively ; a copy of a memoir written by me, of which I still possess the original, noting a policy change of the St Clair County Jail of no longer providing detainees with unan--swered copies of their own 'Captains request' forms, so as to prevent the creation of an official & independent paper-trail by detainees, is attached to this declaration as Exhibit D.

27) Thus, it was based on Strubberg's affirmation of the representa--tion made by C/O Beattie and Strubberg's own instruction of the par--ticular procedure to be followed in my "kind of situation" and his statement that I was "doing it," that I was persuaded and led to believe that I had brought all the issues in my 'Captains requests" to

the attention of jail authorities by submitting my 2 initial 'Captains requests' in compliance with the grievance procedure'; that a 'Detainee Grievance Form' could not be obtained until after a response to my 'Captains requests' had been received; but that because there was an on-going criminal investigation into an underlying matter which was central to the issues in my 'Captains request' complaints, that the completion of the Investigation was a necessary and mandatory prerequisite to receiving a response to my 'Captains requests' and to obtaining a 'Detainee Grievance Form'; and that by awaiting the completion of the investigation — of which I would receive notice — as the "first step" in the grievance procedure, I was actively exhausting the available administrative remedies of the St. Clair County Jail.

28) Furthermore, at no time during our conversation or afterwards did Strubberg nor any other jail official ever advise me that my 'Captains Request' complaints were improperly submitted or deficient or lacking in any way, shape, or form — especially with regard to the particularity or level of details provided as to the circumstances or persons described therein, or as to the second complaint's handwritten form.

29) Throughout the remainder of my stay at the St. Clair County Jail, I repeatedly asked Strubberg about the status of the investigation as it related to my efforts to get a response to each of my 'Captains requests' so as to be able to take the next step in the grievance process (i.e, obtain a 'Detainee Grievance Form'), as that process had been said by Strubberg to apply in my "kind of situation." Several times, I made these inquiries in front of other detainees who happened to be present when I encountered Strubberg.

30) On each of those occasions, Strubberg verbally maintained that my 'Captains Request' complaints were still valid and would be considered, but that because the investigation was still on-going, that I was still required to await its completion before recieving a response to my complaints and pursuing the grievance procedure any further. *Copies of affidavits written by 'then'-detainees Randy McCallum & Ronnie Gully Jr., attesting to representations made by Sgt. Strubberg on several occasions, are attached to this declaration as _Exhibit E_ & _Exhibit F_, respectively.

31) Furthermore, despite my previous assertion of my Miranda-rights, on several occasions between late October of 2014 and January of 2015, after Defendant Keen — upon information & belief — had been caught and terminated for providing contraband to other detainees and had then confessed to having been the source of the pills and contraband that was illegally provided to me and discovered in the 8/4/13 shakedown of the infirmary, both Sgt. Strubberg and Captain Thomas Trice attempted to re-interrogate me in furtherance of their ongoing investigation. *At least one such additional interview was recorded on video by Strubberg & Trice and such footage was saved and is maintained by the St. Clair County Jail.

32) On January 30, 2015, while the investigation was still pending, I was transferred from the St. Clair County Jail to Menard Correctional Center without warning, whereupon the administrative remedies of the county jail's grievance process then became unavailable to me as I had no further access to a 'Detainee Grievance Form'; the county jail's 'Rules and Regulations' handbook contained no instructions about how to proceed if transferred while awaiting a

response to a pending 'Captain's request' complaint; I was never in-formed of the completion of the investigation as Strubberg repeatedly said I would be; and I was informed by family-friend, Kristi Oka-lanuwa, who went to the county jail at my behest to inquire about my options for continuing to exhaust the grievance procedure, that she wa. told by jail authorities that I could not keep pursuing the grievance pro-cedure after I had been transferred to another facility and that I would not recieve a response to any pending complaints.* A copy of Kristi Oka-lanuwa's affidavit, attesting to the information that she personally recieved from St. Clair County Jail authorities regarding my lack of op-tions for continuing the grievance process after my transfer, is attach-ed to this declaration as Exhibit 6.

33) Thus, from 8/4/13, 8/5/13, and up until 1/30/15, I continuosly exhausted the administrative remedies of the county jail that were made available to me — with regard to the allegations in the civil complaint against all the Defendants — by submitting the 2 initial 'Captain's request' forms to the jail's correctional staff in a manner consistent with the jail's written grievance procedure; by further following C/O Beattie.s & Sgt. Strubberg's instructions as to the steps that they repeatedly led me to believe were to be taken in my "kind of situation", in compliance with and reliance upon the jail's policy instruct-ion for detainees to "obey the instructions of Correctional Staff"; and by continuously inquiring about the completion of the investiga-tion as it related to my efforts to obtain both, a response to my 'Captain's request' complaints and a 'Detainee Grievance Form.' (Doc. 62, Exhibit A - KEEN SUBPOENA-000024, p. 2 of 14)

34) On January 26, 2017, I submitted the civil complaint ag-

-ainst all Defendants in this action, with a correct certificate of service, to a prison law library staff member to be electronic-ally filed, stamped, and returned to me in the institutional mail the following day — consistent with the prison procedure for e--filing documents with the district court.

35) However, the civil complaint was not returned to me the following evening (1/27/17) or the next (1/28/17), and fearing that it had been misplaced and/or not filed, I hastily re-wrote the complaint from a combination of memory and the remaining rough-draft materials, which I believe ultimately led to the dis--missal of my claims against the majority of the named-Defendants for the complaint being "devoid of specific allegations sufficiently linking" them to the violations of my rights, as I was missing critical notes and I was under a time-constraint to mail the complaint by the following evening (1/29/17).

36) On January 29, 2017, I successfully delivered the civil complaint in this matter directly to prison authorities for mail--ing, by placing the document into a manila envelope properly add--ressed to the District Court and clearly marked as 'legal mail', and by further placing the mail package into the bars of my cell door and personally monitoring its collection as part of the out--going mail collected every evening by the correctional officers of Menard Correctional Center — all of which is consistent with the institution's system and procedure for placing legal-mail into the prison's internal mail system to be mailed out. Attached to the said envelope was a 'money voucher' (i.e. Offender Authorization for Payment) properly marked as 'legal mail' and which I completed with

my IDOC identification information and the date of mailing, so as to authorize the institution to automatically deduct the correct and sufficient first-class postage amount from my Inmate Trust Fund Account at an immediate or future time period as the inst--itution sees fit — all of which is consistent with the institution's procedure for applying the correct first-class postage to properly addressed envelopes marked as 'legal mail'. As with all legal mail placed into the internal mail system with a completed 'money voucher', the institution's 'mail-room' — upon information and belief — mailed the envelope containing the civil complaint, with the correct prepaid first-class postage being supplied by the institution, regardless of the availability of funds in my trust account, and forwarded the 'money voucher' to the institution's 'business office' as the prerequisite authorization needed for the 'business office' to seek reimbursement for the prepaid postage from my prisoner trust account.* A copy of the file-stamped (no. 566602) 'money voucher' reciept, which was originally attached to the above-described envelope containing the civil complaint in this matter, and which has been described herein, was obtained from Menard's 'Business Office' and is attached to this declaration as Exhibit H. (See also Doc.1, pp. 22-24)

37) The grievance records subpoened by Defendants Keen, Rod-riguez, and Wexford, and cited by them in support of their summary judgment motions, are not an accurate and complete compilation of the complaints I submitted to St. Clair County Jail authorities throughout the period of my detention that is relevant to this action and declaration (i.e. October 9, 2012 to January 30, 2015). (Doc. 62, Exhibit D)

38) In addition to omitting both of the 'Captains requests' described herein and attached to this declaration (i.e., Exhibits A & B the 'grievance records' obtained from the county jail and presented by the Defendants fails to include numerous others, including but not limited to, several 'Captains requests' which I submitted in November and December of 2013 in response to my being assaulted by several C/O's at the county jail — an incident that was the basis of a previously filed lawsuit against instant Defendants Watson and McLaurin, as well as Sgt. Strubberg and several other C/O's. In that lawsuit, the defendants disclosed the exact same 'grievance record' now presented by the instant-Defendants; yet upon being confronted with copies of the aforementioned (handwritten) 'Captains requests' which I had filed along with the civil complaint in that case, those defendants did not dispute them and never raised 'failure to exhaust administrative remedies' as an affirmative defense, although that 'grievance record' suspiciously & conveniently omitted the 'Captains requests'. (See Dallas McIntosh v. Richard Watson, et al: 3:15-cv-01016-JPG-RJD; Doc. 1, attached exhibits)

39) Notably, however, the 'grievance records' subpoenaed and presented by the Defendants does contain a separate 'Captains request' wherein I made specific mention of the above-described 'November-2013' complaints, which are missing from the Defendants' record; and wherein I addressed the administration's effort to "subvert the entire Grievance Procedure by avoiding the creation of a written" staff-response to 'Captains requests' so as to be able to "destroy such complaint forms and thereby "be able to falsely claim "that such a complaint" was never submitted. (See Doc. 62, Ex. D, pp. 16-19)

40) Furthermore, the responsive signatures of the county jail off-icials on the 'Captain's requests' I submitted on 1/26/15, 1/27/15, and 1/28/15, and which are contained within the 'grievance records' subpoened by the Defendants have been forged in that the signa-tures were not actually made on the forms on the days by which they were dated on the complaints. Instead, the signatures were only made after times by which they are dated, and upon information and belief, more than 10 months afterward upon the county jail authorities (including the instant county jail defendants) recieving not-ice that I had filed the previously-described civil action against them. (Doc. 62; Exhibit D — KEEN SUBPOENA 000012, 000016, 000020, 000021)

41) I know that those particular signatures were forged & 'back-dated' because on January 29, 2015 — the eve after my criminal sentencing when I knew I could be imminently transferred into IDOC custody & the day before I in-fact was so transferred — I made repeated inquiry into the status of those particular 'Captain's req-uests' whereupon a 'floor' correctional officer then brought them to me, containing no responsive signatures, so as to assure me that I had not yet recieved any responses to those complaints from any of the staff-officers.

42) Thus, the 'grievance record' presented by the Defendants is the illegitimate product of fraudulent and selectively-false record-keeping, whereby the county jail authorities have selectively produced those of my complaints that they do not percieve as implicating conduct and conditions violative of the Constitution which could give rise to a civil rights action, while forging and

back-dating their signatures upon those particular complaints in order to create a false appearance of a legitimate grievance-record-keeping system. Conversely, they have witheld and/or de-stroyed those of my complaints which they percieve as indicative of conduct and conditions within the jail that is in violation of the Constitution and which they believe indicates the laying of pre-requisite groundwork (i.e., exhaustion of remedies) for future civil rights actions. These obstructionist efforts have been done by the county jail authorities in order to hinder and prevent litiga-tion against them and their contractual partners such as Wex-ford Health Sources, Inc., and is part of a much larger pattern of conduct to obstruct litigation by detainees, that myself and others have repeatedly complained about. (See Doc. 62: Ex. D, pp. 16-19)

43) The facts regarding my efforts to exhaust administrative rem-edies of the jail and the representations & instructions I recieved, that I set forth in my civil complaint against all the Defendants in this matter, were not intended to be a conclusive, detailed, step-by-step narrative of all the facts and circumstances by which I tried to exhaust the grievance procedure — as by law, I knew I was not required to specially plead or demonstrate exhaustion in the civil complaint. Instead, I was simply trying to provide the Court with a general idea of the circumstances under which I took steps to exhaust and the overall representation made to my-self by Strubberg in particular, by which the Court percieve that the remedies were unavailable due to no fault of my own, and that the action had been arguably filed within the statute of limitations, as I was afraid that if I made no such mention that the Court might dismiss the civil complaint on the grounds that on its face

it demonstrates untimeliness and a complete failure to even att-empt to exhaust available administrative remedies. (See Doc. 1, pp. 11-13, 19)

44) At no time since Defendants Keen, Rodriguez, and Wexford each raised the affirmative defense of failure to exhaust admin-istrative remedies, have any of them ever sought to conduct any limited discovery on the issue or tried to ascertain any of the exact facts as stated herein.

45) The foregoing factual allegations and exhibits create a gen-uine issue of material facts and will, if proved at a hearing or trial, support a judgment in my favor, as explained in the brief submitted with this declaration.

Pursuant to 28 U.S.C. section 1746, I declare under pen-alty of perjury that the foregoing is true and correct.

Date: March 7, 2018

Respectfully Submitted,

Dallas McIntosh

Dallas McIntosh, #B-85114
Menard Correctional Center
P.O. Box #1000
Menard, Illinois 62259
(*Pro se Plaintiff)

*EXHIBIT D

(1/3)

\* At exactly 7:00 p.m. on the evening of 1/28/15, Correctional Officer Casey stopped at my cell which is cell #5 on the B-maximum security cell block. Casey opened my cell door in order to collect an envelope of privileged mail addressed to the Administrative Review Board as well as several Captains-Request-Complaint Forms. Over the previous few weeks, I had questioned Casey as well as other officers about Captains Request-Complaint procedures. And On this occasion I told Casey that I had several Captains-Request-Complaints that I needed to have turned in. I asked him about the response protocol in regards to sections listed as, 'Officers actions', 'Supervisors Actions' and 'Admin Actions'. Previously, as in the past prior to 2½ months ago, detainees were permitted to have a copy of Captains-Request-Complaint Forms. Then we were told that copies could only be obtained after the 'Officer Action' section had been filled out. When I questioned Casey about this, he now told me that he could not give a detainee any copy at all. He stated that at the briefing of staff during shift-change, presumably between 5:30 - 6:00pm on 1/28/15, Assistant Supervisor Captain Thomas Trice told all Correctional Officers not to make any copies of Captains-Request Complaints for detainees and not to notarize such complaints. In effect Trice has ordered that no record or otherwise official recognition of such complaints should be created. Officer

EXHIBIT D

(2/3)

Casey then told me that I could make another copy of the form by hand, to which I responded that I already had. I showed him the hand-copied duplicate legal forms as well as the photo-copied & hand drafted supplemental pages that I had notarized by Lt Jacob P. Dinges roughly 48 hrs before. I asked Casey could I trust him to fill out the 'Officer Action' section of the SCCJ Captain Request-Complaint Form and he assured me that he would do his job and see to it that after the 'Officer Action' and 'Supervisors Action' sections of the complaint were filled out, he would personally place these complaints and supplemental papers in the mail-box of either Captain Trice or Superintendent Major Phillip L. McLaurin, whichever whenever I preferred. I told Casey that I would prefer for all of these documents, 3 Captains Request-Complaint forms of 9 pages total to be placed in the Major's correspondence/mail-box. Casey then proceeded to walk to cell #8, within the same block, where he proceeded to speak with Romie Gully Jr. and where Gully proceeded to question Casey on the new regulation of complaints and notaries that had been ordered by Captain Thomas Trice only hours ago. I heard him give Gully the same responses that he had given me. These changes in complaint/notarizing procedure by Trice personally formalized and ordered by Trice come directly after Gully and myself filed a Grievance on conditions and incidents inside the SCCJ on 1/24/15. Those official SCCJ Detainee Grievance Forms were accepted, signed, and

EXHIBIT D
(3/3)

responded to, and returned to Gully on and I by Sergeant Scott While Gully's Grievance was returned on 1/24/15, my own was returned on 1/25/15. Also, I have made several copies of this Grievance, of my Captains-Review Complaints, and of a letter I have sent to the ARB, concerning inconsistencies what I and other detainees strongly believe to be subversions of the entire Grievance Procedure in an effort by Assistant Supervisor Captain Thomas Trice and Supervisor Major Phillip L. McLaurin to avoid lawsuits/litigation and possibly criminal prosecution against them and the St. Clair County Jail, individually, collectively, and in their personal and official capacities, I believe that all of these legal efforts on Gully's and my own behalf obviously denotes the sudden change in policy of complaints/review and paperwork that the Captain Trice so addressed at the staff briefing and like meetings.

STATE OF ILLINOIS

)

) SS

COUNTY OF _Randolph_ )

## AFFIDAVIT

I, _Randy McCallum_ _____ being first duly sworn upon my
oath depose and state that the following matters are both true and
correct made upon personal knowledge and belief, and if called as a
witness, I am competent to testify thereto: _That on or about_ _____

_December 9th 2014, I was housed in Cell block "R" of the St. Clair_
_County Jail with Dallas McIntosh. On that day SGT Strubberg came to_
_the block to hand out tickets for disciplinary Violations. As strubberg_
_tried to speak with mcintosh about his ticket I over heard McIntosh_
_asking "When is the investagation of the infirmary and pills sitiuation_
_going to be over so he can file a Grievance about everything I told_
_you about." Strubberg responded : I keep telling you that our investagation_
_is not complete yet and that youll be notified in writing and given_
_time to file your complaint when the time comes, but im not here_
_about that today."_
_I also remember McIntosh refusing to sign the ticket that he brought_
_him for the violation._

Subscribed and sworn to
before me on the _4th_ day
of _April_ , _2017_.

_Shane W. S_

NOTARY PUBLIC

Respectfully submitted,

_Randy McCall_

OFFICIAL SEAL
SHANE W. GREGSON
Notary Public - State of Illinois
My Commission Expires 2/25/2019

\*EXHIBIT E

STATE OF ILLINOIS                    )
                                     ) SS
COUNTY OF _____              )

## AFFIDAVIT

I, Ronnie Gully, Jr. _____ being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: I was in B-block of the St. Clair County Jail in early December of 2014. When Sgt. Strubberg came to give everybody tickets for being on the same video visit together. When Strubberg tried to give McIntosh his ticket, McIntosh wouldn't sign it and they started arguing about when McIntosh got caught with pills in the infirmary over a year earlier. McIntosh was mad because Strubberg wasn't letting him file a grievance about what happened in the infirmary because there was an investigation going on. McIntosh asked Strubberg when the investigation was going to be over with. So that he could file a grievance about it. Strubberg said he was tired of telling him the same thing, and that McIntosh would be notified when the investigation was over and would be allowed to put in a grievance when it was over, about the whole "situation."

I also got another ticket after that. Strubberg called me for a disciplinary hearing. At that hearing I tried to call McIntosh as one of my witnesses. When I asked for McIntosh to be called, Strubberg got angry and said "what do you want to call him for? He's not going to talk to me. He's scared of me. We've got him under investigation right now, and he can't even grieve about his own problems until we're finished with him. He refused to let me call McIntosh as a witness and I had to call other detainees in B-block

Page 1 of 2

EXHIBIT F

(1/2)

Affidavit (continued) Page 2 of 2

Subscribed and sworn to
before me on the 20 day
of _April_, 2017

_Nichole Dunlap_

NOTARY PUBLIC
OFFICIAL SEAL
NICHOLE A. DUNLAP
Notary Public - State of Illinois
My Commission Expires 2/11/2020

Respectfully submitted,

*EXHIBIT F
(2/2)

STATE OF ILLINOIS          )
                           ) SS
COUNTY OF _____    )

## ~~AFFIDAVIT~~

I, Kristi Okalawra _____ being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: February 2015 _____

Dallas McIntosh had been sentenced and transferred to Menard Correctional Center. I recieved a letter from him, informing me that his property that was left at the St. Clair County jail needed to be picked up within 30 days or else it would be destroyed. He also asked me to find out how he could follow up on grievances that he had filed at the jail now that he was in menard, and whether the jail staff would mail him any response to his grievances.

In February 2015, I personally retrieved his property from St. Clair County jail. I then asked the officer at the desk about what Dallas should do about the grievances he had filed and whether they would contact him somehow. The officer told me that the St. Clair County jail does not respond to grievances filed by prisoners who are no longer housed there and that there was no way for a prisoner at another facility to file or follow up on old grievances. I signed and recieved Dallas' property and left. I soon after wrote Dallas a letter explaining what the officer said and that I recieved his property from the St. Clair County jail.

Subscribed and sworn to
before me on the 27 day
of September , 2017.

Marilyn M Rossi
NOTARY PUBLIC

Respectfully submitted,

Kristi Okalama

"OFFICIAL SEAL"
MARILYN M. ROSSI
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES NOV. 14, 2017

EXHIBIT G

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Authorization for Payment**

566602

Posting Document # _____    Date __1/29/17__

Offender Name_Dallas McIntosh_____  ID#_B-85114_  Housing Unit _East House-_402#

Pay to _____

Address _____

City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of _(1) LEGAL-MAIL Manila Folder *USDC-SDIL*_

☒ I hereby authorize payment of postage for the attached mail. .  ☐ I hereby request information on electronic funds transfers to be placed in the attached mail.

Offender Signature _Dallas McIntosh_____  ID# _B-85114_

Witness Signature _____

☐ Approved ☐ Not Approved   Chief Administrative Officer Signature _____

Postage applied in the amount of _____1_____ dollars and __82__ cents.   *LEGAL-MAIL*

Distribution: Business Office, Offender, Mail Room

*Printed on Recycled Paper*

DOC 0296 (Eff. 1/2006)
(Replaces DC 828)

*EXHIBIT H*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH, #B-85114
      Plaintiff,

v.                   Case No. 17-cv-00103-JPG-DGW

WEXFORD HEALTH SOURCES,
INC., et al.
      Defendants,

## PLAINTIFF'S STATEMENT OF DISPUTED FACTUAL ISSUES

Defendants Keen, Rodriguez, and WEXFORD HEALTH SOURCES, INC., have all moved for summary judgment on all of the Plaintiff's claims (i.e., Counts 1-3) in this action. Pursuant to Local Rule SDIL-LR 7.1(e) of this District Court, the Plaintiff submits the following list of genuine issues of material fact that requires the denial of Defendants' motions:

1) Whether the Plaintiff submitted 'Captains request' complaints, in compliance with St. Clair County Jail's written 'grievance' procedure regarding all of the allegations in his civil complaint against Defendants Keen, Rodriguez, and Wexford Health Sources, Inc.

2) Whether jail officials (i.e., C/O Dante Beattie & Sgt. Steve Strubberg) told Plaintiff that he had to first recieve a response to his 'Captains request' complaints before he could recieve a 'De-

-tainee Grievance Form"; that the Detainee Grievance Forms were not readily accessible and available as they were being kept in the locked offices of administrators; that he (plaintiff) was required to await the completion of an underlying criminal investigation, and notice thereof, as the "first step in the grievance process" where such an investigation was underway, before he could recieve the necessary responses to his 'Captains requests and then obtain a 'Detainee Grievance Form'.

3) Whether the grievance procedure, as it was represented by Sgt. Strubberg to apply in the Plaintiff's "kind of situation", became unavailable to the Plaintiff where he was never notified of its completion and was transferred to another facility while the investigation was still pending.

4) Whether the 'grievance records' subpoened, obtained, and presented by the Defendants in support of their motions for summary judg-ment, are true, complete, and accurate logs of all 'Captains requests' — answered & unanswered — submitted by Plaintiff to county jail authorities while he was detained at the St. Clair County Jail from October 9, 2012 to January 30, 2015; and whether the responsive signatures of correctional staff on several of those 'Captains requests' have been forged & falsely dated.

5) Whether the Plaintiff exhausted the administrative remedies made 'available' to him in light of the instructions & represent-ations of jail officials that the Plaintiff followed and relied on

Date: March 8, 2018                    Respectfully Submitted,

Dallas McIntosh, #B-85114
Menard Correctional Center
P.O. Box #1000
Menard, IL 62259

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH, #B-85114
   Plaintiff,

v.                                          Case No. 17-cv-00103-JPG-DGW

NANCY KEEN, et al.
   Defendants,

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, Dallas McIntosh, pro se in the above-captioned action, and for his Brief in Opposition to Defendants' motions for summary judgment for failure to exhaust administrative remedies, states the following:

### Statement of the Case

This is a § 1983 action filed by a prisoner at Menard Correctional Center seeking damages and a declaratory judgment based on (Count 1) the deliberate indifference to Plaintiff's serious medical needs and failure to protect Plaintiff from attempting to commit suicide and from becoming addicted to non-prescribed prescription drugs; (Count 2) the deliberate indifference to Plaintiff's serious medical needs by having a policy of providing inadequate suicide prevention & prescription handling training to employees, failing to supervise em-

-ployees and fully vet candidates during the hiring process, and failing to maintain procedural safeguards to monitor prescription pills at St. Clair County Jail; and (Count 3) having espoused a policy of deliberate indifference toward detainees, including Plain- -tiff, by failing to provide training and supervision of employees to handle suicide-risk detainees and prescription medication and allow- -ing an "unwritten policy" of employees mishandling suicide-risk det- -ainees. All the Defendants have filed motions for summary judgment as to Counts 1-3 of Plaintiff's claims against them, arguing that Plaintiff failed to exhaust administrative remedies with respect to his allegations in the civil complaint against them. (Docs. 61 & 69)

## Statement of the Facts

The Plaintiff's verified civil complaint, along with his detailed declaration and the supporting exhibits attached thereto, submitted in response to each of the Defendants' motions, states and estab- -lishes that on 8/4/13 and 8/5/13, the Plaintiff properly sub- -mitted timely 'Captain's requests' to St. Clair County Jail auth- -orities regarding his allegations in the civil complaint against the Defendants. Upon seeking to obtain a 'Detainee Grievance Form', the Plaintiff was instructed by St. Clair County Jail authorities— C/O Dante Beattie & Sgt. Steve Strubberg — that he had to recieve a re- -sponse to his 'Captain's request' complaints before he could obtain a 'Detainee Grievance Form'; that he was required to await the comple- -tion of an underlying & ongoing criminal investigation, as the "first step" in the grievance process where such an investigation was underway, before he could get a response to his 'Captain's requests' and thereafter recieve a 'Detainee Grievance Form'; that by awaiting the completion

of the investigation he was thereby exhausting the remedy of the grievance procedure; and that when the investigation was com-plete he would be notified, given a response to each of his 'Cap-tain's requests', and be allowed to recieve a 'Detainee Grievance Form' to further exhaust the grievance process. Plaintiff complied with the jail's manifesto-policy "to obey the instructions of the Cor-rectional Staff" and followed the officers' instructions as to how to proceed with regard to the grievance procedure, yet he was nev-er notified of the completion of the investigation despite making repeated inquiries. The Plaintiff was eventually transferred while the investigation was still pending, whereupon the jail's grievance procedure (i.e., administrative remedy) became "unavailable" to him. Thus, the Plaintiff was induced to rely on the jail officials' rep-resentations and he followed all of their instructions as to how to exhaust the grievance process in his "kind of situation".(Doc.1, pp. 11-13,19; Doc.1-1,p.1); (Plaintiff's Decl., ¶¶ 1-33, Exhibits A-G)

Furthermore, the so-called 'grievance records' obtained by the Defendants, via subpoena, are an incomplete, inaccurate, and fraudulent 'record' of the total amount of 'Captain's requests' submitted by the Plaintiff to St. Clair County Jail authorities during the relevant period of Plaintiff's detention. The 'record' omits numerous other 'Captain's requests' and also contains forged and 'back-dated' responsive signatures of county jail authorities on several of the 'Captain's requests' contained therein, as cited by the Plaintiff. (Plaintiff's Decl., ¶¶ 37-42)

Contrary to those facts set forth by the Plaintiff, the Def-endants argue that Plaintiff never submitted any 'Captain's requests' re-

-garding the allegations pleaded in the civil complaint against them, cites the subpoenaed 'grievance record' as irrebuttable proof of the Plaintiff's alleged failure to submit said 'Captain's requests', and suggests that Sgt. Steve Strubberg would now deny that he in--structed Plaintiff to await the completion of the criminal invest -igation as the first step in grievance process. In conclusion, the Defendants argues that because 'Plaintiff ultimately never filed a ' Detainee Grievance Form' itself, that he "has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a)." (Doc. 62, pp. 1-4, 6-8); (Doc. 70, pp. 1-7)

## Applicable Law

## I. Standard of Review on Motion for Summary Judgment

Summary judgment is to be granted only if the record before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mat--ter of law." Fed. R. Civ. P. 56(a) A "material" fact is one that "might affect the outcome of the suit under governing law." Anderson v. Lib--erty Lobby, Inc., 477 U.S. 242, 248 (1986) A "genuine" issue exists "if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether there is a genuine issue of material fact, the court must view all facts and make all reasonable inferences in favor of the nonmoving party. Matushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) Circumstantial evidence can create an issue of material fact barring summary judgment, as can important unanswered questions in the moving party's factual claims. Fischl v. Armitage, 128 F.3d 50,

56 (2d. Cir. 1997); *Bradich v. City of Chicago, 413 F.3d 688, 691 (7th Cir. 2005).*

Furthermore, courts have held that where an earlier factual plead-ing was unclear or lacking in precise details, the court should not "disregard the later testimony because of an earlier account that was *ambiguous, confusing, or simply incomplete.*" *Jeffreys v. City of New York, 426 F.3d 549, 555, n.2 (2d Cir. 2005)* (*Emphasis by court); Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999)* (plaintiff's affidavit did not contradict his "vague and inconclusive" prior statements)

## II. PLRA-Required Exhaustion of Available Administrative Remedies

The *Prison Litigation Reform Act* ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner ... until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a)* (emphasis added).

Numerous courts, including the Seventh Circuit, have held that a prisoner who disregards instructions by correctional-staff as to how to proceed with respect to the grievance procedure, fails to ex-haust administrative remedies. *Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005); Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004)* ("Just as courts may dismiss suits for failure to cooperate, so administrative bodies may dismiss grievances for lack of coopera-tion; in either case this procedural default blocks later attempts to litigate the merits."); *Fayson v. Timm, 2005 WL 3050627, *2-3*

(N.D. Ill., Nov. 9, 2005) (holding plaintiff who did not respond to Ad-
-ministrative Review Board's request for more information and clarifi-
-cation failed to exhaust); Whitney v. Simonson, 2007 WL 3274373,
*2 (E.D. Cal., Nov. 5, 2007) (dismissing claim of prisoner who filed
a new grievance instead of trying to reinstate the old one as he
was instructed to do) (*all emphasis added)

   In order to combat the potential for abuse by prison officials
who, knowingly or unknowingly, give erroneous instructions designed
to mislead a cooperative prisoner into non-compliance with the
"written" grievance procedure, and then later seek to use that
non-compliance to support an affirmative defense of failure to
exhaust administrative remedies, the Seventh Circuit has unani-
-mously held that "prison officials will be bound by their oral rep-
-resentations to inmates concerning compliance with the grievance
process." Pavey v. Conley, 170 Fed. Appx. 4, 8-9 (7th Cir. 2006)
("We have held that inmates may rely on the assurances of prison officials
when they are led to believe that satisfactory steps have been taken
to exhaust administrative remedies ... prison officials who encourage, or
even invite, noncompliance with written procedure cannot then turn
around and use the deviation as evidence of a failure to exhaust. In
reaching this conclusion, we joined other circuits..."), favorably citing
Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005) (stating that
information prison officials provided to prisoner about grievance pro-
-cedures was relevant in deciding whether available administrative
remedies had been exhausted"; and Brown v. Croak, 312 F.3d 109, 112
(3d Cir. 2002) (holding that prisoner's noncompliance with written
grievance procedures did not constitute a failure to exhaust where
"he relied" to his detriment on" prison officials' "erroneous or mislead-

(N.D. Ill., Nov. 9, 2005) (holding plaintiff who did not respond to Ad-
-ministrative Review Board's request for more information and clarifi-
-cation failed to exhaust); Whitney v. Simonson, 2007 WL 3274373,
*2 (E.D. Cal., Nov. 5, 2007) (dismissing claim of prisoner who filed
a new grievance instead of trying to reinstate the old one as he
was instructed to do) (all emphasis added)

   In order to combat the potential for abuse by prison officials
who, knowingly or unknowingly, give erroneous instructions designed
to mislead a cooperative prisoner into non-compliance with the
"written" grievance procedure, and then later seek to use that
non-compliance to support an affirmative defense of failure to
exhaust administrative remedies, the Seventh Circuit has unani-
-mously held that "prison officials will be bound by their oral rep-
-resentations to inmates concerning compliance with the grievance
process." Pavey v. Conley, 170 Fed. Appx. 4, 8-9 (7th Cir. 2006)
("We have held that inmates may rely on the assurances of prison officials
when they are led to believe that satisfactory steps have been taken
to exhaust administrative remedies ... prison officials who encourage, or
even invite, noncompliance with written procedure cannot then turn
around and use the deviation as evidence of a failure to exhaust. In
reaching this conclusion, we joined other circuits...") favorably citing
Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005) (stating that
information prison officials provided to prisoner about grievance pro-
-cedures was relevant in deciding whether available administrative
remedies had been exhausted"; and Brown v. Croak, 312 F.3d 109, 112
(3d Cir. 2002) (holding that prisoner's noncompliance with written
grievance procedures did not constitute a failure to exhaust where
he relied to his detriment on" prison officials' "erroneous or mislead-

-ing instructions...")(*All emphasis added); See also Croswell v. Mc-Coy, 2003 WL 962534, *4 (N.D.N.Y. Mar. 11, 2003) (holding that a prisoner who relied on the prison officials' representations as to the correct procedure had exhausted)

Section 1997e(a) only requires that prisoners exhaust such ad-ministrative remedies "as are available." Brown v. Croak, 312 F.3d 109, 112-13 (3d. Cir. 2002). The Seventh Circuit has held that "[pr]ison officials may not take unfair advantage of the exhaustion re-quirement... and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use aff-irmative misconduct to prevent a prisoner from exhausting." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (*Emphasis added, internal quotations omitted) Thus, misinforming prisoners as to the availability or as to the operation of administrative remedies, may make remedies unavailable. Croak, 312 F.3d at 112-13. (holding that if security officials told the plaintiff to wait for completion of an investigation before grieving, and then never informed him of its completion, the grievance system was unavailable to him). A remedy may also be unavailable because a prisoner has been transferred out of the particular prison or jail system. Ray v. Hogg, 2007 WL 271-3902, *12 (E.D. Mich., Sept. 18, 2007) (holding that prisoner trans-ferred out of jail had no access to jail's grievance process); Szkup v. Arpaio, 2006 WL 2821685, *2 (D. Ariz., Sept. 29, 2006) (de-clining to dismiss for non-exhaustion where jail policy didn't say what to do if transferred and defendants submitted no evidence that remedy was available after transfer)

Regarding the factual particulars and level of detail that a

prisoner's grievance must contain, the Seventh Circuit has held that grievances need only to contain the sort of information that the administrative rules require and that where "the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 649-50 (7th Cir. 2002) ("As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming... Defendants can't complain that he failed to do more."); Jones v. Bock, 549 U.S. 199, 200 (2007) ("Exhaustion is not per se inadequate under the PLRA when an individual later sued was not named in the grievance... the MDOC policy did not specifically require a prisoner to name anyone in the grievance. Nor does the PLRA impose such a requirement.") (*Emphasis by court)

Prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." Jones at 199. Instead, lack of exhaustion is an affirmative defense that a defendant has the burden of proving. Brengettey v. Horton, 423 F.3d 674, 682 (7th Cir. 2005) And where the record establishes disputed issues of fact on the question, that burden has not been met. Pavey v. Conley, 170 Fed. Appx. 4, 7 (7th Cir. 2006).

Finally, actions that mislead a prisoner into not exhausting, or not exhausting correctly, may be deemed to estop (i.e., prevent) prison personnel from claiming non-exhaustion, in addition to or instead of making the remedy unavailable. Wright v. Hollingsworth, 260 F.3d 357, 358 n. 2 (5th Cir. 2001); Chinnici v. Edwards, 2008 WL 3851294, *5

(D. Vt., Aug. 12, 2008) (citing supervisor's statement that sex abuse complaint did not require completing the grievance process) To establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment. Lewis v. Washington, 300. F.3d 829, 834 (7th Cir. 2002) When asserting equitable estoppel against the government, one must also prove affirmative misconduct, which "requires an affirmative act to misrepresent or mislead." Id at 834-35. (declining to apply equitable estoppel where the defendants did not affirmatively mislead the plaintiff) Thus, the circumstances that support an estoppel-argument will generally also support an argument that the remedy was unavailable. See Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (suggesting courts consider availability first)

## ARGUMENT

\* POINT I — THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR THE DEFENDANTS ON EACH OF PLAINTIFF'S CLAIMS AGAINST THEM

The declaration & exhibits of the Plaintiff and the Defendants unsworn argument & exhibits (i.e. 'grievance record') are squarely contradictory as to (1) whether the Plaintiff filed 'Captain's requests' regarding the allegations in the civil complaint against the Defendants; (2) whether Sgt. Strubberg made the representation (or misrepresentation) that the Plaintiff was required to await the completion of a pending internal criminal investigation as the "first

step' in the grievance procedure before he could recieve a response to his 'Captains requests' and thereafter obtain a 'Detainee Grievance Form'; (3) whether the grievance procedure, as it was represented by Strubberg to apply in the Plaintiff's "kind of situation", was unavailable to the 'Plaintiff' upon his transfer to another facility while the investigation was still pending; and (4) whether the 'grievance record' subpoened, presented, and relied on by the Defendants is a true, accurate, and complete record of all 'Captains requests — answered & unanswered — submitted by Plaintiff during his detention.

The facts established by Plaintiff's declaration show that he complied with the jail's written grievance procedure by submitting 2 initial 'Captains request' forms within 24 hours following each of the relevant events giving rise to the allegations and claims in the civil complaint against all of the Defendants; that any deviation from, or noncompliance with the written procedure — such as not submitting a 'Detainee Grievance Form' within 24 hours after each event & then awaiting the completion of an investigation as a prerequisite to recieving responses to the original 'Captains requests' and as a prerequisite to being allowed to then recieve a 'Detainee Grievance Form' — was due to (1) the refusal of the jail's correctional staff to provide Plaintiff with 'Detainee Grievance Forms'(in violation of their own written grievance procedure) (2) the reliance of Plaintiff upon the instructions and representations of jail officials that he needed to await the completion of an investigation before recieving a response to his 'Captains requests' in his "kind of situation" and that such a response was neccessary before he could get a 'Detainee Grievance'; that Sgt. Strubberg repeatedly assured the Plaintiff that both of his 'Captains requests' complaints were valid & would be considered when the

investigation was complete, and that the Plaintiff would be notified when the investigation was complete; that the Plaintiff was never notified of the completion of the investigation and was transferred while the investigation was still pending whereupon the grievance procedure became unavailable; and that the 'grievance record' sub-poened by the Defendants is not an accurate, true, and complete record of all 'Captains requests' submitted by Plaintiff during his detention. (Plaintiff's Decl. ¶¶ 1-33, 37-42)

The Defendants, by contrast, claim that the Plaintiff simply never submitted either a 'Captains request' or 'Detainee Grievance' about any of the issues regarding the allegations in the civil complaint against them and did not do so in a timely-manner; that "upon information and belief" Strubberg would now deny that he made any of the representations so truthfully attested to by Plaintiff and other witnesses; and that the 'grievance record' sub-poened by them is a complete record of all 'Captains requests' and 'Detainee Grievances' submitted by the Plaintiff while he was detained at the jail. (Doc. 62, pp. 1-8); (Doc. 70, pp. 2-7) The Defendants further argue that "any information plaintiff re-cieved from Sergeant Strubberg regarding filing a grievance as to plaintiff's claims against Wexford or Rodriguez "is irrelev-ant to this exhaustion analysis" because "by the time plaintiff ask-ed Sergeant Strubberg about filing a grievance... the twenty-four hour window to file a Captains Request and grievance pur-suant to the grievance procedure had closed." (Dec. 70, p. 7)

The Defendants' erroneous claims and arguments are clearly con-tradicted by the Plaintiff's declaration and fails to take into

account those facts and exhibits set out in detail in the declaration. Furthermore, none of the facts or exhibits established by the Plaintiff's declaration are contradictory to, or inconsistent with the brief references made in the civil complaint regarding the issue of exhaustion. The declaration only presents a clear, complete, and detailed account of the circumstances under which Plaintiff took steps to exhaust the grievance procedure of the jail, and it explains how he was led by jail authorities to believe that his efforts were appropriate and correct. Yet, the Defendants simply never bothered or sought to conduct any limited discovery whatsoever on the issue of exhaustion, which would have disclosed to them all of the particular facts and exhibits set forth in the declaration, even though they were given notice of the witnesses who possessed knowledge relevant issue pursuant to Plaintiff's compliance with the Court's scheduling order (Doc. 60, p.1, ¶ IB.) Instead, the Defendants all sought to seize upon the brief, inarticulate, and incomplete references the Plaintiff made concerning his efforts to exhaust, as mentioned in the civil complaint, by misconstruing those references so as to present them to the Court as having been clear, conclusive, step-by-step details of Plaintiff's effort to exhaust — which they were not. The Plaintiff only made general mention of his efforts to exhaust, in the complaint, so as to avoid the possibility that the Court might dismiss the civil complaint for a complete failure to even mention exhaustion, as he was without giving him the chance to provide fuller explanation. (Plaintiff's Decl. ¶¶ 1-3, 43-44)

Thus, there are clearly genuine issues of fact and the factual disputes are also material. While the Plaintiff concedes that he never submitted a 'Detainee Grievance Form' within 24 hours of each

event — pursuant to the written grievance procedure — the failure to do so was the fault of the jail's administration who made the forms inaccessible to regular correctional officers who were charged with providing the forms to detainees, and the correctional staff who refused to provide the forms to Plaintiff until he had first recieved written response to his 'Captains request' complaint, both acts which violated the very grievance procedure that the Defendants now cite against the Plaintiff as proof of his inexhaustion. (Plaintiff's Decl. ¶¶ 6, 9-11 19-21); (See Doc. 62; Ex. A, p.9) ("Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer.") (Emphasis Added). Under the governing law, the refusal to provide Plaintiff with the "De-tainee Grievance Form" and the violation of the grievance procedure by jail's own staff would make the administrative remedies "unavailable", whether the authorities deliberately misled Plaintiff about the operation of the process or not. Dale v. Lappin, 376 F.3d 652, 654-56 (7th Cir. 2004) (holding that denial of necessary grievance forms are sufficient to prevent dismissal for non-exhaustion); Dale v. Chandler, 438 F.3d 804, 809, 812 (7th Cir. 2006) ("Prison officials may not take unfair advan-tage of the exhaustion requirement ... and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting (Emphasis added). Thus, the remedies were 'unavailable' to Plaintiff to the extent that he was both misled as to the operation of the grievance pro-cedure and was denied a 'Detainee Grievance Form'.

Yet, it was Sgt. Strubberg who also instructed the Plaintiff that he had to recieve a response to his 'Captain's requests' before being all-owed to have a 'Detainee Grievance Form'; who led the Plaintiff to believe that in his particular "kind of situation" he was required to

await the completion of the criminal investigation before recieving the prerequisite response to his 'Captains request'; which, in turn, would permit him to recieve a 'Detainee Grievance'; that by submitting his 2 initial 'Captain's request' and awaiting the completion of the investigation that the Plaintiff was actively exhausting the grievance process; that those 'Captains requests' were valid and would be given an eventual response; and that the Plaintiff would be notified when the investigation was complete. (Plaintiff's Decl., ¶¶ 15-30); (Doc. 1, pp. 12-13, 19) The Plaintiff relied on Strubberg's repeated representations (or misrepresentations) and complied with the instructions that he gave as to the operation of the grievance procedure in the Plaintiff's "kind of situation". Under the governing law, Strubberg must be held to his repeated verbal representations and instructions concerning both the operation of the grievance process and the Plaintiff's compliance with it, contrary to the Defendants' unsupported argument that Strubberg's instructions were "irrelevant." Pavey v. Conley, 170 Fed. Appx. 4, 8-9 (7th Cir. 2006) As such, the Plaintiff's transfer during the pending investigation without being provided the notice of the investigation's completion, as Strubberg said he would be given, made the administrative remedies "unavailable"; and the Defendants are estopped from citing the Plaintiff's purported deviation from the written procedure, which was induced by reliance upon Strubberg's representation, as evidence of Plaintiff's supposed failure to exhaust. The Seventh Circuit's Pavey-holding is particularly appropriate where the Plaintiff's failure or refusal to comply and cooperate with Strubberg's instructions could have been cited as the "lack of cooperation"-grounds by which jail authorities could have dismissed any later grievance of Plaintiff for "procedural default" which, in turn, would have blocked "later attempts to litigate

the merits. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) Thus no matter how the Plaintiff proceeded, he would have been in a pro-cedural "catch 22" situation between noncompliance with the writ-ten grievance procedure, on the one hand; and deliberately disregard-ing the repeated instructions and representations of correctional staff that were purported to apply to the Plaintiff's "kind of situation" with the end-design of providing him with a final and complete ad-ministrative remedy and decision, on the other hand. No matter what choice the Plaintiff made the Defendants could have potentially cited either supposed deviation as evidence of failure to exhaust. *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005)(Prisoner "ignor-ed both of the ARB's instructions concerning the form of his response By failing to take advantage of the procedure offered by the ARB for reconsidering his grievance" prisoner "failed to exhaust his administr-ative remedies")(Emphasis added) Yet, both the courts and the PL-RA clearly favors prisoners doing everything they can to obtain a final administrative response to grievances, and where the Plaintiff honestly believed the representations of correctional staff concerning the operation of the grievance procedure and followed their instr-uctions so as to achieve the desired result of the courts and the PLRA, to hold that the Plaintiff's case must be dismissed for "failure to exhaust" would create a perverse and unjust result. In-stead, the Plaintiff argues that under the governing law, Sgt. Stru-bberg must be bound by all of his oral representations; the admin-istrative remedies became 'unavailable' when the Plaintiff was trans-ferred without being provided notice that the investigation had been completed; and that the Defendants should be estopped from either using the authority-induced deviation from the supposed written pro-cedure as evidence of "failure to exhaust" or from raising the aff-

irmative defense as a whole.

If the representations made by Strubberg were false, then he should not have made them. And contrary to any argument of the Defendant the representations made by Strubberg predominate over any supposed previous procedural default of the Plaintiff in not filing a 'Detainee Grievance Form' within 24 hours of each event — a deviation caused by the inaccessibility of the forms and misinformation recieved by another correctional officer. That is because, had Strubberg not strung the Plaintiff along with his instructions and representations, the Plain-tiff could have pursued other avenues for either completing the griev-ance process or bringing civil action. For example, the Plaintiff could have sought to file a 'Detainee Grievance' after the prescribed 24 hour window by showing 'good cause' for the delay in that its untime-liness was due to the administration's own failure to make the forms readily accessible and due to the correctional officer's refusal to pro-vide the forms, resulting from the representation that Plaintiff had to first recieve written response to his 'Captains request'. Alterna-tively, the Plaintiff could have brought immediate civil action within 2 years of being denied the 'Detainee Grievance Form' on the grounds that such denial made the remedies "unavailable." In the first instance of example, it would have been within the discretion of the administration whether or not to make an exception to the 'untimeliness of the 'Detainee Grievance' under the particular circumstances; in the sec-ond instance, it would have been Plaintiff's prerogative to bring liti-gation in the courts.* Thus, the prejudice caused by Strubberg's repres-entations and instructions takes precedence over any supposed previous-deviations of the written procedure, in that it caused the Plaintiff to continuously pursue what he was led to believe was a viable administra-

-tive remedy; and to thereby delay bringing action in a miscalculation of the running of the statute of limitations, as it has long been held by the courts that the limitations period is tolled "while a prisoner com-pletes the administrative grievance process" even where the grievance procedure is ultimately never completed and becomes unavailable. Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001), reversed & remanded, John-son v. Rivera, 2002 WL 31012161, *1 (N.D.Ill. 2002) That is why Sgt Strubberg must be bound to his predominating representations and instr-uctions which led Plaintiff to believe he was complying with the grie-ance procedure to be adhered to in his particular "kind of situation."

As to the Defendants' suggested notion that Strubberg would now testify that he did not make such representations, they have presented no substantial evidence of that denial and such a notion is clearly contradicted by the sworn statements in the Plaintiff's declaration, as well as by the affidavits of 2 witnesses. However, assuming argu-endo that Strubberg would so falsely testify as the Defendants have insinuated, it would then be Plaintiff's position that Strubberg is being untruthful on the Defendants' behalf or that he knowingly misled the Plaintiff about the particular grievance procedure to be followed in the Plaintiff's "kind of situation" in the first place, so as to prevent him from properly exhausting and to derail any future litigation — on design, which, upon information and belief, may indeed have been true.

Furthermore, the Defendants' reliance upon Pozo v. McCaughtry and Bridges v. Gilbert is misplaced, as those cases dealt with determin--ing if a grievant had "properly exhausted" in circumstances where there had been actual decisions on the grievances by the administration; not whether jail officials are bound by their oral representations and instruct

-ions, whether the affirmative conduct of staff rendered the administrative remedies 'unavailable'; whether defendants are estopped from using the procedural deviations caused by their own representations and instructions as evidence of a 'failure to exhaust', or whether the defendants are estopped from raising the affirmative defense of 'failure to exhaust administrative remedies' as a whole. (Doc. 62, p. 5

Finally, the Plaintiff has disputed the accuracy, completeness, and integrity of the so-called 'grievance record' subpoenaed by the Defendants from the St. Clair County Jail & presented by them as evidence of Plaintiff's failure to submit 'Captains request' complaints, by way of copies of his 'Captains requests' and upon his own personal knowledge. (Plaintiff's Decl. ¶¶ 6-26, 37-42; Ex. A & B) Yet, although the Plaintiff has challenged the signatures on the 'Captains requests' within the Defendants' "grievance record", it nevertheless remains an observable fact that all of the 'Captains requests' contained therein possess responsive signatures upon them. (See Doc. 62; Ex. I pp. 12-22) However, the Plaintiff's declaration and exhibits make it clear that his 'Captains requests' relating to this matter were not given a response by the jail authorities, who repeatedly maintained that Plaintiff was required to await the completion of the investigation before recieving such a response — which never occured prior to the Plaintiff's transfer which caused the administrative remedies, as represented by Strubberg, to become unavailable. Thus, such a purported 'grievance record' is not proof that Plaintiff never "submitted" any 'Captains requests' regarding the allegations in the civil complaint against the Defendants; but instead raises an important, material, and unanswered question as to whether Plaintiff's unanswered 'Captains requests' would have been included in the 'grievance record' in the first

place, where the record only contains answered complaints. Where such a question remains unanswered and unaddressed by the Defendants, their summary judgment motions should be denied.

Thus, the facts that the Plaintiff did submit 'Captains requests' in compliance with the written grievance procedure; was induced to rely upon the refusals, representations, and instructions of the correctional staff in not being provided or submitting a 'Detainee Grievance Form'; was never provided notice of the completion of the investigation in following the instructions of a jail official; was transferred to another facility where the jail's grievance procedure was no longer available; and has disputed the 'grievance record' of the Defendants which fails to address important unanswered questions, is in itself evidence that establishes that there are genuine issues of material fact preventing summary judgment in favor of any of the Defendants and also constitutes evidence under the governing law that the administrative remedies were unavailable & the failure to completely exhaust was due to no fault of the Plaintiff. Finally, the evidence establishes that the affirmative defense raised by the Defendants is subject to equitable estoppel with regard to the evidence which they rely on and with regard to their defense as a whole. As such, a reasonable Court or jury could find in favor of the Plaintiff based on the facts and exhibits in his declaration, and summary judgment must therefore be denied. (Plaintiff's Decl, ¶¶ 1-45); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008)

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Plaintiff respectfully requests this Honorable Court to deny the motions for summary judgment by Defendants Keen, Rodriguez, and Wexford Health Sources, Inc.; to conduct a hearing on exhaustion of administrative remedies before an advisory jury to determine the issue; and for any such further relief that this Honorable Court deems as just, fair & equitable.

Date: March 7, 2018

Respectfully Submitted,

Dallas McIntosh

Dallas McIntosh, #B-85114
Menard Correctional Center
P.O. Box #1000
Menard, IL 62259
(Pro se Plaintiff)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH, #B-85114
          Plaintiff,

v.                                    Case No. 17-cv-00103-JPG-DGW

WEXFORD HEALTH SOURCES,
INC., et al.
          Defendants,

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2018, I delivered the foregoing documents directly to prison authorities to be placed into the institution's internal mail system at Menard Correctional Center for mailing to the prison's law library, consistent to be electronically filed using the CM/ECF system — consistent with the institution's procedure for having court documents filed — which, in turn, will send a copy & notification of such filings to the Defendants at:

Maxwell D. Huber, #6315427
Cassiday Schade, LLP.
100 North Broadway, Suite #1580
St. Louis, MO 63102
(*Attorney for Defendant Keen)

Rodney M. Sharp, #6191776

Kathryn M. Hueselbusch, 6286903

600 Washington Ave — 15th Floor

St. Louis, MO 63101 - 1313

(*Attorneys for Defendants Wexford Health Sources, Inc. & Rodriguez

s/ Dallas McIntosh

Dallas McIntosh #B-85114

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: March 9, 2018

Respectfully Submitted

Dallas McIntosh #B-85114

Dallas McIntosh #B-85114

Menard Correctional Center

P.O. Box #1000

Menard, IL 62259

(*Pro se Plaintiff)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

_Dallas McIntosh_
Name

_B-85114_
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?          Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?          Yes or (No)

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here: _____

3.  Should this document be filed in a pending case?          (Yes) or No

    If yes, please list case number:   _3:17-cv-00103-JPG-DGW_

    If yes, but you do not know the case number mark here: _____

4.  Please list the total number of pages being transmitted: _____

5.  If multiple documents, please identify each document and the number of pages for each document.  For example:  Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
| --- | --- |
| Motion To Combine | 4 |
| Plaintiff's Declaration | 29 |
| Plaintiff's Statement | 3 |
| Plaintiff's Brief | 20 |
| Certificate of Service | 2 |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.  Discovery materials sent to the Court will be returned unfiled.