# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH, #B-85114
Plaintiff,

v.                                    Case No. 17-cv-00103-JPG-DGW

WEXFORD HEALTH SOURCES,
INC., et al.

SCANNED AT MENARD and E-mailed
6-21-18   by  PS    17  pages
date       initials   No.

## PLAINTIFF'S MOTION FOR A 90-DAY CONTINUANCE OF PAVEY-EVIDENTIARY HEARING

NOW COMES the Plaintiff, Dallas McIntosh, pro-se in the above-captioned action, and moves this Honorable Court for a 90 (ninety) day continuance of the 6/25/2018 Pavey-Evidentiary Hearing on the issue of 'failure to exhaust administrative remedies' in order to (1) facilitate the appearance of witnesses to testify on Plaintiff's behalf, (2) submit a motion for recruitment of counsel for purposes of the hearing, (3) present & obtain further evidence and testimony at the hearing, and (4) otherwise prepare for the hearing. Plaintiff states the following in support thereof:

1) On January 29, 2017, Plaintiff initiated the above-captioned action by delivering the original civil complaint against all Defendants to prison authorities, with correct pre-paid postage, to be mailed to the Clerk of Court and be electronically filed. (Doc. 1)

2) In the civil complaint, with regard to Plaintiff's efforts to exhaust the administrative remedies of the St. Clair County Jail, Plaintiff factually alleged that after submitting initial Captain's Request complaints about everything, he was specifically informed by Sgt. Steve Strubberg that he was instead required to await the completion of an underlying and ongoing criminal investigation as the first step in the grievance process before he could proceed further in the grievance procedure. (Doc. 1, pp. 11-13) Plaintiff further factually alleged that "[t]hroughout the rest of [his] detention in the St. Clair County Jail, Strubberg repeatedly informed Plaintiff as well as others, that the investigation was still on-going... thereby delaying Plaintiff's next step in the [grievance] process." (Id., p. 13) (emphasis added). Plaintiff followed Strubberg's repeated instructions, yet was transferred to Menard Correctional Center while the investigation was still on-going and Plaintiff was never given notice of its completion. (Id., p. 19)

3) On November 21, 2017, Defendant Keen filed a motion for summary judgment for failure to exhaust administrative remedies, along with a memorandum of law in support of the motion. (Docs. 61 & 62) In her memorandum of law, Defendant Keen made reference to Plaintiff's factual allegations that "Seargeant Steve Strubberg instructed Plaintiff to await the completion of the internal investigation", before asserting that "[o]n information and belief, Defendant believes Sergeant Steve Strubberg will testify he did not instruct Plaintiff to wait until an internal investigation was completed as the first step in the grievance process." (Doc. 62, p. 7)

4) On March 13, 2018, Plaintiff's Response to both of the motions

for summary judgment for failure to exhaust administrative remedies — filed by both sets of Defendants — was filed. (Doc. 88) In his "Declaration in Opposition to Defendants' Motions for Summary Judgment", Plaintiff set forth a specific, detailed, and complete account of all steps that he took to exhaust the administrative remedies of the St. Clair County Jail, with respect to all issues at the root of his civil claims against the Defendants. (Doc. 88, pp. 3-15) In particular, Plaintiff attested that he filed Captain's Request Forms within 24 hours of each relevant event, in compliance with the jail's written grievance procedure, before being led to believe by Sgt. Strubberg that he (Plaintiff) was required to await the completion of an underlying/ongoing criminal investigation as the "first step" in the entire grievance process, before either receiving a response to the Captain's Request Forms or being given a Detainee Grievance Form, due to the particular circumstances of his "kind of situation" where such a criminal investigation was underway. (Doc. 88, pp. 3-11)

5) Furthermore, in support of Plaintiff's sworn assertions about the oral representations made by Sgt. Strubberg, Plaintiff attached the signed and notarized affidavits of Randy McCallum & Ronnie Gully Jr. — 2 previous St. Clair County Jail detainees who were being detained during the relevant period of Plaintiff's own detention and who both truthfully attested to hearing and witnessing first-hand Sgt. Strubberg make similar ~~consitent~~ and consistent oral statements and representations to Plaintiff, or about Plaintiff, on at least 2 occasions. (Doc. 88, pp. 14 & 25-27)

6) On June 1, 2018, Defendants Wexford and Rodriguez filed a "Motion for Leave to Supplement their Motion for Summary Judgment

for Failure to Exhaust and Memorandum in Support [Docs. 69, 70]" wherein they noted that "Plaintiff filed a Declaration in Opposition to Defendants' Motions for Summary Judgment wherein he repeatedly states that he relied upon statements by St. Clair County Jail Sergeant Steve Strubberg as the reason he failed to comply with the Jail's (written) grievance procedure. (Doc. 95, p. 2) (*Emphasis & Parenthetic Expression Added) The Defendants then sought leave to file "an Affidavit from Sergeant Steve Strubberg"- wherein Strubberg stated "that he never advised plaintiff to wait to file a grievance or other written complaints... until any investigations were completed or for any other reasons" — as a supplement to "their Motion for Summary Judgment and Memorandum in Support regarding plaintiff's failure to exhaust his administrative remedies". (Doc. 95, pp. 1-2 ; Doc. 95-1, pp. 2 & 4)

7) On June 4, 2018, the Court entered an order granting the Defendants' (Wexford & Rodriguez) aforementioned 'Motion for Leave to File'; and within 5 minutes thereafter, set a Pavey-Evidentiary Hearing for the date of June 25, 2018 — a mere 21 days from the date upon which the order was entered.; yet, due to the practices of the law library at Menard Correctional Center (where Plaintiff is incarcerated) with regard to the delivery of Electronic Filing Notices from the Court, Plaintiff did not actually recieve either of the Court's orders until June 9, 2018 — leaving Plaintiff with only 15 days notice of the hearing and with only as much time to prepare for the hearing. (Docs. 96, 97) Defendants Wexford and Rodriguez then filed their "Supplement" shortly thereafter the Court's scheduling of the Evidentiary Hearing, which again contained Strubberg's affidavit. (Doc. 98) Plaintiff received Defendants' supplement along with the Court's orders on June 9, 2018.

8) On June 14, 2018, Plaintiff first filed his Motion for a 90-day Continuance of the Pavey-Evidentiary Hearing wherein he sought such a continuance to "facilitate the appearance of witnesses to testify on" his behalf, to "submit a motion for recruitment of counsel for purposes of the hearing", to "present & obtain further evidence in support of Plaintiff's position", and "to otherwise prepare for the hearing". (Doc. 103)

9) The Court subsequently denied Plaintiff's request for a continuance of the Evidentiary Hearing, citing that Plaintiff's motion provided "no information about the proposed testimony of [the] witnesses or how such testimony would assist the Court in determining whether Plaintiff exhausted his administrative remedies prior to filing this action"; noting that Plaintiff requested additional time to "file a motion for appointment of counsel because he does not have the experience to represent himself in" the hearing; yet citing that "[c]ivil litigants... do not have a constitutional or statutory right to counsel"; and advising that the Court "will ensure Plaintiff has an opportunity at the hearing to present his testimony and cross-examine any witnesses or respond to any evidence presented by Defendants." (Doc. 104) Plaintiff thereafter drafted the instant second motion for a continuance, so as to cure the deficiencies of the first motion and to address the statements of the Court in its order.

10) As set forth and demonstrated above (¶¶ 2-6 of this motion), the question of what representations were made (or, according to Defendants, 'not made') by Sgt. Strubberg is a point of contention/contestation between the parties, and a central point at that. Furthermore, it is no mere or insignificant coincidence that the issue of the representations of Strubberg, arises again and again in the pleadings & filings

of all parties. That is because the 7th Circuit Court has unanimously held that "prison officials will be bound by their oral representations to inmates concerning compliance with the grievance process", that "inmates may rely on the assurances of prison officials when they are led to believe that satisfactory steps have been taken to exhaust administrative remedies", ~~and~~ that "prison officials who encourage, or even invite, non-compliance with written (grievance) procedure cannot then turn around and use the deviation as evidence of a failure to exhaust", and that "a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct (e.g., providing a prisoner with erroneous instructions as to the operation of the grievance process in a particular circumstance) to prevent a prisoner from exhausting." Pavey v. Conley, 170 Fed. Appx. 4, 8-9 (7th Cir. 2006)(Parenthetic Expression added); Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006)(Emphasis & Parenthetic Expression added)

11) Plaintiff states that the above-referenced citations are applicable to 'jail officials' and 'pre-trial detainees', and are directly related the issue of 'exhaustion of administrative remedies' in the instant case, insofar as the dispute between the parties as to what representations were made by Sgt. Strubberg to Plaintiff with respect to the instructions to be followed in the jail's grievance procedure. The issue of Strubberg's representations has been the central issue with regard to whether Plaintiff exhausted his administrative remedies, and Plaintiff set forth both legal authority and argument on the issue in his "Brief in Opposition to Defendants' Motions for Summary Judgment." (Doc. 88, pp. 34-36, 38-52)

12) Based on the conflict and contradictions between Sgt. Stru-

-bberg's prior representations (as set forth in Plaintiff's declaration and in the affidavits of Randy McCallum & Ronnie Gully Jr.) and his current sworn statements (as set forth by Defendants' Wexford & Rodriguez 'motion to supplement'), it is now Plaintiff's position that Strubberg is either presently being dishonest about the representations that he previously and repeatedly made to Plaintiff, or that he had always knowingly misled Plaintiff as to how to comply with the grievance process so as to prevent any future litigation against the County Jail and/or Wexford (their contractual partner). *If the latter is true (i.e., Strubberg deliberately misled Plaintiff), then Plaintiff believes he may know the motive for Strubberg's (mis)conduct, but he will need time to obtain and present further evidence and testimony as to the matter. Such an extension of time is particularly appropriate where Plaintiff could not have known exactly what Strubberg's testimony would be until it was first presented in Defendants' motion for leave to file supplement.

13) In any case, the testimony of Randy McCallum & Ronnie Gully Jr. — both of whom Plaintiff believes would testify consistently with the statements and matters contained within their affidavits — are directly relevant to the issue of "exhaustion of administrative remedies" as they their testimony is consistent with Plaintiff's own sworn assertions of the representations made by Strubberg, and taken as true, would assist the Court in a finding that the administrative remedies of the jail were made "unavailable" to Plaintiff due to his reliance upon the misrepresentations of Strubberg. *Yet, upon information and belief, both McCallum and Gully Jr. are currently incarcerated; thus, Plaintiff will need to prevail upon outside sources (i.e. family or friends) to learn their current institutional addresses, and he will need to find a way to have them present at the hearing. While Plaintiff has been advised by other

inmates that he may need to file a motion of "habeas corpus ad testificandum" to facilitate the appearance and testimony of McCollum & Gully Jr., Plaintiff has no experience in filing such a motion and will have to research how to do so. This will require additional time and a continuance of the Evidentiary Hearing.

14) Furthermore, Plaintiff also attached an affidavit of Kristi ~~Child~~ Okanlanwa to his declaration wherein she attested to having personally inquired, at Plaintiff's behest, of St. Clair County Jail officials as to "Plaintiff's options for 'follow[ing] up on grievances that he had filed at the jail now that he was in Menard, and whether the jail staff would mail him any response to his grievances." (Doc. 88, pp. 14-15, 28) Okalanwa's affidavit was submitted as proof of the fact that after I was transferred into the custody of IDOC, I continued to try to exhaust the administrative remedies of the jail with regard to the events which gave rise to my civil claims against the Defendants. Plaintiff believes that if called to testify, not only would Okalanwa be able to testify consistently as to the matters contained in the relevant portion of my declaration and her own affidavit, but that she would be able to further attest to Plaintiff having informed her (subsequently) of the particular issues that he was grieving about — the events which gave rise to the civil claims against Defendants.

15) Okalanwa's testimony would be relevant in 2 ways. First, it would support the fact that Plaintiff is telling the truth about his efforts to exhaust the administrative remedies of the jail as it relates to the events underlying the civil claims in this case, as it begs the question: Why would Plaintiff have had Okalanwa inquire into how he could continue to grieve the matter (or, "follow up" on the issue) if he had not taken the steps, ~~as set forth~~

as set forth in his declaration, to exhaust the administrative remedies in the first place? Secondly, her testimony would serve to rebut any argument by the Defendants that there was any way to that the jail's grievance procedure remained available to me after my transfer. The latter issue is particularly relevant to the Court's determination of whether Plaintiff exhausted "available" administrative remedies, as numerous courts have held that a remedy is available if a grievance system provides a way to pursue grievances after transfer. See Jackson v. Walker, 2007 WL 23449-38, *5 (E.D. Ky., Aug. 14, 2007)(holding transfer did not excuse non-exhaustion because the process can be completed by mail); Soto v. Belcher, 339 F.Supp. 2d 592, 595 (S.D.N.Y 2004)(holding transfer did not excuse exhaustion requirement since regulations permit grievances after transfer)* Yet, Okalonwa is currently outside of the country on a vacation and will not be back in the U.S. before the currently scheduled Evidentiary Hearing; wherefore Plaintiff is trying to find out when she will return and will need a continuance of the hearing in order to facilitate her appearance as a witness.

16) Finally – with regard to ensuring the appearance of witnesses with relevant testimony, – Plaintiff will need additional time to subpoena several individuals who worked at the county jail during the relevant period, and whom Plaintiff believes will testify to matters in a manner that will demonstrate that (1) there was an administrative-effort to subvert the grievance process in order to prevent detainees from exhausting administrative remedies, and (2) that the grievance record-keeping system was fundamentally flawed so as to have failed to keep a complete account of all Captain's Requests & Detainee Grievance Forms that were submitted by detainees to jail staff. The first aforementioned issue was clearly set forth in my declaration opposing summary judgment wherein I set

forth facts which demonstrated a deliberate effort by the jail's administration to conceal my efforts to exhaust administrative remedies in this matter, and where I even cited a particular Captain's Request complaint contained within the Defendants' own records wherein I had complained about such administrative obstruction. (Doc. 88, pp. 19-20, ¶ 42; See also Doc. 62, Exhibit D, pp. 16-19) I also attached a copy of a memoir that I had written to document my interactions with officers of the jail concerning what I believed to be obstructionist efforts by the administration as to the grievance process. (Doc. 88, pp. 12, ¶ 26; and pp. 22-24)

17) The second aforementioned issue was also set forth in my declaration and my brief wherein I stated & argued that "[t]he grievance records subpoenaed by Defendants... are not an accurate and complete compilation of the complaints I submitted to St. Clair County Jail authorities throughout the period of my ~~det~~ detention that is relevant to this action"; and wherein I recounted and cited numerous Captain's Request complaints that had been omitted from Defendants' grievance record, a complaint wherein I had referenced the aforementioned 'missing' complaints, and where I mentioned other 'missing' complaints that had been attached to a previous lawsuit where such complaints were conceded by the county-defendants. (Doc. 88, pp. 17-18, 35, 42, 50-51) Furthermore, Plaintiff also submitted and filed copies of the Captain's Request Forms, regarding the issues underlying his civil claims, as supplemental exhibits with the Court. (Doc. 91) These supplemental exhibits of Plaintiff directly contradicts the Defendants' arguments that Plaintiff never pursued the grievance process, and also contradicts the record-keeping of Yvonne McCall — the custodian of records for the jail who signed an affidavit and provided the so-called "Grievance Records" to the

Defendants. (Doc. 62, Exhibit D)

18) Both of the aforementioned issues are directly relevant to the Court's determination of whether Plaintiff exhausted the "available" administrative remedies of the jail, because they (1) will help to determine whether the remedies were "unavailable" due to the systematic obstruction by practices of the administration, and (2) will help the Court assess and weigh the credibility and reliability of the "Grievance Record"-keeping process for determining whether the records presented by Defendants are definitive of whether Plaintiff submitted any Captain's Request Forms about the relevant issues.

19) Thus, Plaintiff will need to subpoena several individuals — including, but not limited to, Yvonne McCall & Defendant Keen herself — who Plaintiff knows have knowledge of actions taken by the administration that would constitute obstruction of the grievance procedure and/or the true state of the grievance-record-keeping process. Yet, the time between which Plaintiff actually received notice of the Pavey-hearing, and the actual date of the hearing itself, has deprived him of the necessary amount of time needed to obtain and issue subpoenas on the relevant individuals to ensure their appearance at the hearing. This is especially true where Plaintiff has only just received (6/18/18) the blank "Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action" from the Clerk's office, which he requested on 6/11/18. Thus, Plaintiff will need the requested continuance of the hearing to have the subpoenas issued on the relevant individuals (some of whom no longer work at the jail), especially as those subpoenas must first be sent to the Court for approval. (See ~~Doc.~~ Fed. R. Civ. P., Rule 45)

20) Furthermore, Plaintiff will need additional time and a continuance of the hearing to draft and file a motion for recruitment of counsel for the purposes of the hearing; and assuming that such a motion would be granted, recruited-counsel would likely need time to review the relevant matters.

21) It will be necessary for Plaintiff to have counsel at the hearing as Plaintiff does not have the skill, competency, or legal knowledge/ability that is needed to conduct meaningful examinations/cross-examinations of witnesses so as to be channeled to bring out the material facts which will support Plaintiff's position and test witness-credibility. Nor does Plaintiff have the legal expertise needed to make the relevant or necessary objections to potential improper questioning of witnesses or himself, by the Defendants, so as to ensure that such examinations are bound by legal parameters or to preserve the issues in the hearing for the purposes of a prospective appeal. Without such counsel, the entire Evidentiary Hearing will be nothing more than a one-sided onslaught of Plaintiff and his witnesses by the adversarial-style cross-examination of the 4 professional attorneys of the Defendants.

22) Insofar as the Court's admonishment, that (1) "Civil litigants... do not have a constitutional or statutory right to counsel," and (2) "the Court... is aware (Plaintiff) is not an attorney and will ensure Plaintiff has an opportunity at the hearing to present his testimony and cross-examine any witnesses or respond to any evidence presented by Defendants", relates to Plaintiff's requests to facilitate the appearance of witnesses (as requested above-herein), or his request for a continuance to file a motion for recruitment of counsel, Plaintiff states that he would be greatly and irreparably prejudiced by this Court's prospective decision to have him att-

-end the Evidentiary Hearing without the relevant witnesses he seeks to have appear and/or by the lack of counsel upon filing a motion for recruitment of counsel. (Doc. 104) (*Emphasis added)

23) It is fundamentally unfair for Plaintiff to be limited and restricted to only presenting "his testimony", where there is other relevant and material testimony which Plaintiff seeks to present — some of which pertains to matters to which Plaintiff could not personally attest, as he cannot be presumed to know what all his prospective witnesses would know. Furthermore, it is even more unfair for Plaintiff to be restricted and only allowed to cross-examine "any witnesses", or respond to "any evidence" that is only "presented by Defendants". First, there is no witness-list or other indication of what witnesses the Defendants will even present (or what evidence they will present) or whether such witnesses or evidence will be relevant to the opposing issues raised by Plaintiff. Secondly, the Defendants have no obligation to present evidence or call witnesses that will be relevant or favorable to Plaintiff's responses or cross-examinations, or which will go toward Plaintiff's opposing position or argument. To hold an Evidentiary Hearing under such circumstances, would the metaphorical equivalent of having a chess-match where one player is allowed to select what pieces his opponent will or will not be allowed to play with, while also positioning the board to his own advantage. It is Plaintiff's responsibility and right to subpoena certain individuals so as to bring forth particular issues, and not to simply rely on Defendants (who will bring witnesses of their choosing and liking) to somehow accommodate him.

24) Finally, while it is true that Plaintiff does "not have a constitutional or statutory right" to have counsel "appoint[ed]"; Plaintiff

does have a procedural right to request that counsel be recruited, and where Plaintiff demonstrates meritable reasons for such a request, he respectfully and humbly believes that the Honorable Court has a duty to at least attempt to recruit counsel on Plaintiff's behalf. Accordingly, issues of credibility and conflicting testimony have been widely and repeatedly held to support requests for counsel. Steele v. Shah, 87 F.3d 1266, 1271 (11th Cir. 1996) (noting where case will turn on assessments of credibility; denial of counsel should be reconsidered); Bright v. Hickman, 96 F.Supp. 2d 572, 577-78 (E.D. Tex 2000) (need for cross-examination skills to deal with conflicting testimony supported appointment of counsel)

25) Thus, Plaintiff requests a continuance of the hearing within which he can draft the "motion for recruitment" — which is meritable — and within which to just otherwise prepare for the hearing. Plaintiff needs time to try to obtain a "Personal Property" call-pass from Menard so as to be able to access his excess legal storage and retrieve pertinent documents and exhibits he would need for the hearing, as Plaintiff is only permitted to keep a portion of legal material in his cell and stored such documents in the Personal Property building while the Court was deciding whether or not to grant summary judgment. Furthermore, Plaintiff is currently bogged down and under pressure to complete a responsive brief in another civil action, pursuant to a court order that was issued long before this Court scheduled the Pavey-hearing. Plaintiff is simply not capable of meaningfully and competently handling so much litigation in such a short period of time (other responsive brief is due by 6/29/18). (*Exhibit A)

26) Plaintiff will be prejudiced by all of the factors stated herein

unless this Honorable Court grants him the requested continuance he seeks, within which he can take the necessary action.

WHEREFORE, Plaintiff requests that this Honorable Court — in the interests of fairness and justice — grant Plaintiff a 90-day continuance of the Pavey-Evidentiary Hearing, within which to (1) facilitate the appearances of witnesses, (2) request the recruitment of counsel for purposes of the hearing, (3) to obtain & present further evidence and testimony in support of Plaintiff's position, (4) to otherwise prepare for the hearing, and for such further relief as this Honorable Court deems fair, just, and equitable.

Dated: June 18, 2018

Respectfully Submitted,

_Dallas McIntosh_
Dallas McIntosh, #B-85114
Menard Correctional Center
P.O. Box #1000
Menard, IL 62259
(*Pro se Plaintiff)

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2018, I placed the foregoing document into the institution's internal mail system at Menard Correctional Center, to be forwarded to the law library and electronically filed, using the CM/ECF system, which, in turn, will send a notification & copy of such filings to all counsels of record, at:

Timothy P. Dugan

Maxwell D. Huber
100 North Broadway, Suite #1580
St. Louis, MO 63102
(*Attorneys for Defendant Keen)

Kevin Peek
600 Washington Ave. — 15th Floor
St. Louis, MO 63101-1313
(*Attorneys for Defendants Wexford & Rodriguez)

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: June 18, 2018         s/ Dallas McIntosh
                            Dallas McIntosh, #B-85114
                            (*Exhibit Attached)

*Exhibit A* 

State of Illinois

# IN THE TWENTIETH JUDICIAL CIRCUIT, ST. CLAIR COUNTY, BELLEVILLE, ILLINOIS

PLAINTIFF  DALLAS McIntosh

vs.

ROSENBLUM

Defendant

No. 17-AR-58

FILED
ST. CLAIR COUNTY
MAY 15 2018
CIRCUIT CLERK

## ORDER

This cause coming before the Court; the Court being fully advised in the premises and having jurisdiction of the subject matter;

The Court finds: Plaintiff motion for extension of time to file responsive brief to MTD.

IT IS THEREFORE ORDERED: Motion granted. Defendant given until 6/29/2018 to file response to MTD. (motion to dismiss) motion to dismiss set for hearing on July, 17, 2018 @ 10:00 am Courtroom 401.

Attorneys:

Enter:

.................................................  .................................................
Plaintiff                                           Judge
                                                    Hon. Christopher T. Kolker
.................................................  Associate Judge
Defendant

White—CC;  Yellow—Plaintiff;  Pink—Defendant

CC-14-95
PRINTIT PLUS 314.821.2533



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

RECEIVED JUN 2 1 2018

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Name: Dallas McIntosh

ID Number: B-85114

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?   Yes or **No**

   If this is a habeas case, please circle the related statute: 28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition?   Yes or **No**

   If yes, please list case number: _____

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?   **Yes** or No

   If yes, please list case number: 17-CV-00103-JPG-DGW

   If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted: 17 (Motion for Continuance of Hearing w/Exhibit)

5. If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| | |
| | |
| | |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.