IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DALLAS MCINTOSH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:17-cv-00103-JPG-DGW |
| v. ) | |
| ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **BARBARA RODRIGUEZ and NANCY** ) | |
| **KEEN,** ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether McIntosh exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** the Motions for Summary Judgment (Docs. 61 & 69) be **DENIED**, and the Court adopt the following findings of fact and conclusions of law.

### BACKGROUND AND PROCEDURAL FACTS

Plaintiff Dallas McIntosh, an inmate, filed this action alleging deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. McIntosh alleged the defendants were deliberately indifferent to his serious medical issues and failed to protect him from harming himself during his time at St. Clair County Jail, in violation of the Fourteenth Amendment (Doc.

1). Remaining before the Court are the following claims:

> **Count 1** – Defendants Keen and Rodriguez were deliberately indifferent to Plaintiff's serious medical needs and failed to protect Plaintiff from attempting to commit suicide and becoming addicted to non-prescribed prescription drugs in violation of the Fourteenth Amendment;
>
> **Count 2** – Wexford Health Sources was deliberately indifferent to Plaintiff's serious medical needs by having a policy of providing inadequate suicide prevention and prescription handling training to employees, failing to supervise employees and fully vet candidates during the hiring process, and failing to maintain procedural safeguards to monitor prescription pills at St. Clair County Jail in violation of the Fourteenth Amendment.

(Doc. 9, p. 13).

On or about October 10, 2012, McIntosh was transported to the St. Clair County Jail from St. Louis University Hospital to await trial (Doc. 1, p. 5). McIntosh was listed in poor physical condition because he had recently had surgery for gunshot wounds, had upwards of twenty surgical staples in his abdomen, had a drain attached to his body, was urinating blood, and was forced to depend on a walker and wheelchair for mobility (Doc. 1, p. 5). Because of these medical issues, McIntosh was housed in the infirmary under the care of nurses and assigned correctional officers (Doc. 1, p. 5).

On February 8, 2013, McIntosh's bunk and property were searched, and a corrections officer discovered a suicide note, which was addressed to his friends and family members; in it, McIntosh expressed the intent to end his life (Doc. 1, p. 5). McIntosh was then moved to the suicide watch room and placed in a suicide restraint chair (Doc. 1, p. 5). Nurse Nancy Keen was on duty when the suicide note was discovered (Doc. 1, p. 5).

In the days immediately following his return to the infirmary, Keen began to give McIntosh a variety of pills that were not prescribed for him (Doc. 1, p. 5). These pills likely included sleeping pills, anxiety and depression pills, pain killers, and opioids (Doc. 1, p. 8).

McIntosh became heavily addicted to the medication, so Keen gave him more pills in greater strengths and provided him with excess pills so that he could last between her shifts (Doc. 1, p. 8). This occasionally included several days-worth of pills at once being given to McIntosh (Doc. 1, p. 8). Keen suggested he put the pills up, or conceal them from the correctional staff, when she gave him extra (Doc. 1, p. 8).

During the first six weeks of McIntosh's prescription pill regimen, he frequently experienced excruciating headaches, severe stomach pain, diarrhea, cramps, and nausea, which caused him to violently vomit, sometimes with blood, leaving his throat and esophagus painfully raw (Doc. 1, p. 8). McIntosh felt feelings of confusion, grief, depression, sadness, and anger; he also suffered mood swings and had increased and constant thoughts of suicide (Doc. 1, p. 8). McIntosh missed 2-3 meal trays per day due to his drowsiness and the medicine's suppression of his appetite (Doc. 1, p. 8). He suffered abrupt weight loss, causing him to be placed on a high-calorie diet by the jail physician (Doc. 1, p. 9). McIntosh was kept in this drug-induced state for almost six consecutive months (Doc. 1, p. 9).

On August 4, 2013, a shakedown of the infirmary resulted in the discovery of multiple bundles of various pills, including Trazadone, Lortab, Phenergan, and Tramadol (Doc. 1, pp. 9-10). In total, 55 prescription pills were located in McIntosh's property (Doc. 1, p. 10). Nurse Barbara Rodriguez examined the pills and advised Sutherlin that McIntosh was not prescribed any of them, and some of them were not even from the Wexford formulary (Doc. 1, p. 10). Keen and Rodriguez, the on-duty nurses at the time the pills were discovered, did not screen McIntosh for suicidal ideation at this time (Doc. 1, p. 10). Instead, he was placed in punitive segregation (Doc. 1, pp. 10-11, 14). He was allowed to keep his mattress from the infirmary, which contained another bundle of pills (Doc. 1, p. 11).

McIntosh states he could not think straight given he was still affected by the pills (Doc. 1, p. 11). He became increasingly depressed as the evening wore on, so he took more pills and started to contemplate suicide (Doc. 1, p. 11). McIntosh took the rest of the 10-15 pills and attempted to hang himself using a sheet as a rope (Doc. 1, p. 11). The sheet came loose, causing McIntosh to fall and strike his head on the bed frame and floor (Doc. 1, p. 11). McIntosh lost consciousness for several hours (Doc. 1, p. 11). He believes the pills influenced him to attempt to overdose and hang himself, as he had never taken any actual physical steps toward suicide before taking them (Doc. 1, p. 12).

Several days later, Steve Strubberg informed McIntosh that he was under criminal investigation concerning the pills discovered with his property (Doc. 1, p. 12). McIntosh told Strubberg he wanted to file a grievance, but Strubberg told him that the first step in the grievance process would be the completion of the criminal investigation (Doc. 1, pp. 12-13).

McIntosh alleges that in October 2014, Keen was caught providing non-prescribed pills and contraband to another detainee, at which point she was investigated, fired, and banned from St. Clair County Jail (Doc. 1, p. 18). He claims that, during the investigation, Keen confessed to having supplied the pills found in McIntosh's possession on August 4, 2013 (Doc. 1, p. 18).

## St. Claire County Jail Grievance Process

During McIntosh's detention, the St. Clair County Jail had in place a "Detainee Rules and Regulations" manual which set forth a grievance procedure (Docs. 62-1, 62-2, 62-3). Prior to submitting a formal grievance an inmate must submit a "Captain's Request" (Doc. 62-1, p. 9; Doc. 62-2, p. 8; Doc. 62-3, p. 10). The Captain's Request is a written document submitted to the shift supervisor who in turn gives the request to the Captain. It appears that regardless of what, if anything, happens with the Captain's Request, the manual requires inmates to submit a formal

grievance again to the shift supervisor, in writing, within 24 hours "after he/she learns of circumstances or conditions which prompted the grievance" (Doc. 62-1, p. 9; Doc. 62-2, p. 8; Doc. 62-3, p. 10). The shift supervisor passes the grievance onto the "immediate supervisor". The supervisor has three days to file a response, which the detainee can appeal to the Assistant Jail Superintendent, who issues a final decision (Doc. 62-1, p. 9; Doc. 62-2, p. 8; Doc. 62-3, p. 10).

### *Pavey* Specific Facts

McIntosh alleged in his complaint, and again in his response to summary judgment, that he filed a Captains Request[1] immediately after being transferred to segregation (Doc. 1, p. 9; Doc. 88, p. 3), which was the same day the pills were found (Doc. 88, pp. 4-5). He submitted the Captain's Request and asked Correctional Officer Beatty for a formal grievance form (Doc. 88, p. 5). Officer Beatty told him that he had to wait for a reply from his Captains Request before he would be given a formal grievance form (Doc. 88, p. 6). Later that same evening, McIntosh attempted suicide by taking the rest of the 10-15 pills and attempted to hang himself using a sheet as a rope, hit his head and was knocked unconscious (Doc. 1, p. 11).

McIntosh states in his verified response to the motion for summary judgment that he received no response to his Captain's Request (Doc. 88, p. 6). On August 6, 2013 Strubberg escorted McIntosh to his office to discuss the investigation (Doc. 88, p. 6). McIntosh stated in his Complaint, his response to the motions for summary judgment, and his testimony at the hearing, that Strubberg informed him he was under criminal investigation concerning the pills discovered with his property and would have to wait until the investigation was complete to file a grievance

---

[1] McIntosh stated at the hearing that he uses the terms "grievance" and "Captains Request" interchangeably and explains that the term grievance is used by detainees to refer to both documents (*See also* Doc. 88, pp. 4-5).

(Doc. 1, pp. 12-13, Doc. 88, p. 10).[2] He then handed McIntosh's Captain's Request back to him (Doc. 88, p. 8). Although Strubberg testified he never made such a statement, McIntosh submitted affidavits from Randy McCallum and Ronnie Gully, Jr. attesting they overheard Strubberg tell McIntosh he would be informed when the investigation was over and would then be allowed to file a grievance (Doc. 88, pp. 25-26).

Defendants stated at the hearing that the investigation was open for fourteen months.

### LEGAL AND ADMINISTRATIVE STANDARDS

Summary judgment is proper only where the moving party can demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Defendants, however, bear the burden of proving a failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d at 809.

---

[2] McIntosh filed with his Complaint a copy of a St. Clair County Sherriff's Department Incident report that corroborates the jail was investigating the possibility of criminal charges (Doc. 1-1, p. 1).

Page **6** of **9**

An inmate, however, is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed. Appx. 10, 13 (7th Cir. 2009). When prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not available. *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). A remedy also becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006).

If a plaintiff has exhausted all remedies, the case will proceed on the merits. *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). If a plaintiff has not exhausted, the Court may either allow the plaintiff to exhaust or terminate the matter. *Id.*

## CONCLUSIONS OF LAW

The Court is cognizant that the burden for summary judgment falls on the moving party and therefore all facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

Here, the parties have vastly different versions of the facts regarding McIntosh's attempts to exhaust administrative remedies. Defendants argue McIntosh failed to file a grievance within the required twenty-four hours and therefore has failed to exhaust his administrative remedies (Doc. 62, p. 7; Doc. 70, p. 7). Conversely, McIntosh says he attempted to file a grievance, or Captain's Request, but it was returned to him by Strubberg and he was told he could not file a formal grievance until after the investigation was completed (Doc. 88, pp. 8, 10). McIntosh's

claim is bolstered by the sworn witness affidavits attesting that Strubberg made such statements (Doc. 88, pp. 25-26), as well as a copy of the returned Captain's Request (Doc. 91).

Defendants ask this Court, however, to find McIntosh's version of events not credible and to disregard the grievance and witness affidavits he submitted as evidence. They argue the grievance must be fabricated because it was not signed off on by any administrators. Additionally, had they received the grievance, their investigation would have been concluded much more quickly than the fourteen months it actually took.

Construing the facts in the light most favorable to the non-moving party, however, the lack of signatures by administrators supports McIntosh's claim the Captains Request was returned to him as premature. Further, the Court finds Defendants' argument that the length of the investigation proves McIntosh did not submit the grievance, tenuous at best.[3] Finally, the Defendants provide no reason for this Court to disregard the affidavits from other inmates attesting to the fact that they heard Strubberg tell McIntosh he had to wait to file his grievance until after the investigation was complete.[4]

When prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not available. *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). Construing the evidence in the light most favorable to McIntosh, he attempted to file a Captains Grievance which was returned to him, and was told he could not file a formal grievance until after the investigation.[5] As such, Defendants denied McIntosh access to

---

[3] Among other reasonable inferences more favorable to McIntosh is the possibility that the jail simply returned the grievance to him without bothering to respond to it.

[4] The Court declines to find the affidavits unpersuasively merely because they are from inmates.

[5] Defendants additionally argue that none of McIntosh's grievances specifically identify them (Doc. 62, p. 7; 70, p. 7). However, the Captain's Request returned to McIntosh is replete with references to nursing staff, the nurse who provided him with the illicit drugs (later identified as Defendant Keen), and specifically names Wexford (Doc. 91). Providing notice to those who may later be sued is not one of the purposes of the exhaustion requirement. *Maddox v. Love,* 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)). Rather, the goal is to alert

the grievance process and summary judgment should be denied.

## RECOMMENDATIONS

For the above stated reasons, it is **RECOMMENDED** the Motions for Summary Judgment (Docs. 61 & 69) be **DENIED,** and the Court adopt the preceding findings of fact and conclusions of law.

## NOTICE REGARDING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), any party may serve and file written **OBJECTIONS** to this Report and Recommendation/Proposed Findings of Fact and Conclusions of Law within fourteen (14) days after service. Failure to file such **OBJECTIONS** shall result in a waiver of the right to appeal all issues, both factual and legal, which are addressed in the Report and Recommendation. *Video Views, Inc. v. Studio 21, Ltd. and Joseph Sclafani,* 797 F.2d 538 (7th Cir. 1986).

**You are not to file an appeal as to the Report and Recommendation**. An appeal is inappropriate until after the District Judge issues an Order either affirming or reversing the Report and Recommendation/Proposed Findings of Fact and Conclusions of Law of the U.S. Magistrate Judge.

**DATED: July 20, 2018**

*/s/ Donald G. Wilkerson*

**DONALD G. WILKERSON**
**United States Magistrate Judge**

---

the State to potential problems and allow the prison system the opportunity to resolve some or all of the issues prior to involving the courts. *Id.* at 721; *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). Thus, had the process been available to McIntosh, he would have submitted the Captain's Request and the State would have been placed on notice of his allegations against Wexford (specifically name at Doc. 91, p. 5) as well as Keen and Rodriguez by description (Doc. 91).