# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH, #B-85114
         Plaintiff,

V.

Case No. 17-CV-00103-DGW-JPG

WEXFORD HEALTH SOURCES,
INC., et al.
         Defendants,

SCANNED AT PINCKNEYVILLE CC and E-mailed
9/28/18 by ___ 21 pages
date    initials   No.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' WEXFORD HEALTH SOURCES, INC. and BARBARA RODRIGUEZ'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now COMES the Plaintiff Dallas McIntosh, pro-se in the above-captioned action, and pursuant to 28 U.S.C. § 636 (b)(i) and SDIL-LR 73.1(b), and for his Response to Defendants' Objections to the Magistrate Judge's Report and Recommendation (Doc. 128) regarding Wexford Defendants' Motion for Summary Judgment, states as follows:

## Background

On January 29, 2017, Plaintiff initiated the above-caption

-ed action against Wexford Defendants for claims of deliberate indifference. (Doc. 1) On January 5, 2018, Wexford Defendants filed their Motion for Summary Judgment on the issue of whether Plaintiff exhausted his available administrative remedies prior to filing suit, as required by the PLRA. (Doc. 70; 42 U.S.C § 1997e(a)). Both, the Plaintiff & Wexford Defendants filed a timely response (Doc. 88) and supplemental filings (Docs. 89-91 and 98), which cul- -minated in a two-part Pavey Evidentiary Hearing (due to an electrical malfunction at the first hearing) before Magistrate Judge Wilkerson on July 16, 2018 and August 15, 2018. On Aug- -ust 22, 2018, Magistrate Judge Wilkerson issued his Report and Recommendation (hereinafter "Report"), in which he recommended that the District Court deny Wexford Defendants' (hereinafter "Def.'s") Motion for Summary Judgment. (Doc. 127)

A Judge may "accept, reject, or modify" the recommended disposition" of the Magistrate Judge, "receive further evidence · or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "The court isn't required to hold further hearings to review the magistrate judge's findings simply be- -cause witness credibility is at issue." Pavey v. Conley 2010 WL 4683609, citing U.S. v. Raddatz, 447 U.S. 667, 673-76 (1980) The exhaustion of administrative remedies is an affirmative defense, which the defendants bear the burden of proving. Jones v. Bock, 549 U.S. 199, 216 (2007) The District Judge may only "modify or set aside any part of the order that

is <u>clearly erroneous</u> or <u>contrary to law.</u>" <u>Fed. R. Civ. P. 72(a)</u>
As set forth below, Plaintiff responds to the meritless
objections of Def.'s to the Magistrate Judge's analysis pro-
-vided in the Report and requests that the Honorable Court
accepts the Report and Recommendations.

## Plaintiff's Response

\* <u>The "dating" of the Magistrate Judge's Report and Recomm-
-endation is Obviously a Mere Clerical Error & Def.'s Insin-
-uation that Sgt. Strubberg's Testimony was not Considered
by the Court is False, Erroneous, and is Directly Contradicted
by the Report.</u>

Upon signing the Report, the Magistrate Judge inadvertantly
dated the document as having been written on "July 20, 2018"
(es-instead of August 20, 2018), although the Pavey hearing
was not concluded until August 15, 2018. (Doc. 127, p.9) While
Plaintiff indeed noticed the mistake, he recognized it for the cler-
-ical error that it was; Def.'s, however, seek to play upon the
error to suggest that because the Report was so erroneously
dated, that the Magistrate Judge must have decided the issue
of exhaustion in Plaintiff's favor "before [he] heard <u>any</u> ev-
-idence from Sgt. Strubberg" and therefore, there is a "question
as to whether [he] even considered the testimony of Sgt. Stru-
-bberg." (Doc. 128, p.4, original emphasis)

The Def.'s notion/argument is clearly false, without merit, and (most importantly) contradicted by the Report itself. In the Report, the Magistrate Judge noted that the Def.'s "argue the grievance must be fabricated because it was not signed off on by any administrators" and that "had they received the grievance, their investigation would have been concluded much more quickly than the fourteen months it actually took"; yet, neither of these arguments were made by Defendants until the second part of the hearing where Sgt. Strubberg testified. (Doc. 127, p.8) Thus, it is undeniably clear that (1) the Magistrate Judge's Report was not written until after August 15, 2018, and the second part of the hearing, and (2) (where Strubberg testified); and (2) that Strubberg's testimony was given consideration by the Court.

✱ The Witness-Affidavits Submitted by Plaintiff were Directly Related to the Conversation between Plaintiff and Sgt. Strubberg, and was also Directly Relevant to Strubberg's Credibility and whether the Administrative Remedies were Available to Plaintiff; Def.'s had Ample Opportunity to Address the Witness-Affidavits at the Pavey Hearing but Declined to do so.

In Plaintiff's Declaration & Response in Opposition to Def.'s Motion for Summary Judgment, he truthfully attested to the fact that during a conversation with Sgt. Strubberg, on or about

August 6, 2013, that Strubberg told Plaintiff that he would be required to await the completion of a criminal investigation before he would be able to pursue/complete the grievance procedure. (Doc. 88, pp. 7-12) Plaintiff further attested that throughout the rest of his detention at the jail, that he repeatedly — sometimes in front of other detainees — pressed Strubberg about when the investigation would be completed so that Plaintiff could complete the grievance process as it was represented to operate by Sgt. Strubberg; whereupon Strubberg, on each such occasion, told Plaintiff that he "was still required to await its completion before receiving a response to [his] complaints and pursuing the grievance procedure any further." (Id, pp. 13-14, ¶¶ 29-30) In support of these facts, Plaintiff attached the affidavits of (then-detainees) Randy McCallum & Ronnie Gully Jr. (hereinafter "witness-affidavits") to his Declaration/Response, wherein both individuals testified to having both personally witnessed such a verbal exchange between Plaintiff and Strubberg, where Strubberg told Plaintiff that as he (Strubberg) had told Plaintiff "before," the "investigation" was not yet "complete" and that Plaintiff would be "notified" when it was completed and be allowed to file a grievance at that time. (Id, pp. 14, 25-27)

Thus, contrary to Def.'s argument, it is clear that the events recounted in the witness-affidavits were related to the conversation which initially occurred between Plaintiff & Strubberg on 8/6/13 and were also relevant to the question of whether Stru-

-bberg made the (mis)representations as to the operation of the grievance process, which in turn, made the grievance process un-available. The witness-affidavits clearly supported Plaintiff's version of what had occurred between Strubberg & himself as early as August of 2013. As stated by Def.'s themselves, the true crux of Strubberg's testimony, as revealed by his affidavit & in-person testimony, is that he never advised plaintiff to wait to file a grievance or other written complaints while incar-cerated at St. Clair County Jail until any investigations were completed or for any other reasons." (Doc. 98, p.2; Doc. 98-1, p.1, ¶3) Thus, in their argument that "the affidavits are not rele-vant as they do not support Plaintiff's version of what occurred in August of 2013", the Def.'s are being deliberately obtuse and are slyly trying to change the context and substance of the allegations made by Plaintiff and the testimony of Stru--bberg, so as to narrow the scope of the issue/dispute down to a single encounter in "August of 2013" when the repre--sentations of Strubberg clearly extended beyond that. (Doc 128, pp. 5-6) Taken as true, the witness-affidavits directly contra--dict & dispute Strubberg's testimony that he "never" made such representations "on any occasion" and further supports the notion and ~~probable~~ probability that he had also made such a representation during the prior conversation with Plaintiff in "August of 2013, as the witness affidavits attest to Stru--bberg's own admission that he had told Plaintiff the same thing "before." To put it bluntly: if Strubberg was lying about having

never made such representations "on any occasion"; then he is lying about everything, including the conversation which took place in "August of 2013".

Therefore, the witness-affidavits clearly constituted direct evidence of the fact that such representations were made by Strubberg & also served to impeach his sworn statements; and said affidavits also further constituted circumstantial evidence that infers and makes it more probable that Strubberg had indeed told Plaintiff the same thing "before" in "August of 2013." As specifically noted by the Magistrate Judge in his Report, Plaintiff's "claim is bolstered by the sworn witness affidavits attesting that Strubberg made such statements". (Doc. 127, pp. 7-8) In any case, the Def.'s argument that "the affidavits are not relevant", is completely erroneous. Fed. R. Evid. Rule 401 ("Evidence is relevant if ... it has any tendency to make a fact more or less probable than it would be without the evidence...")("Emphasis added)

\* The Def.'s further falsely claim & insinuate that they were not afforded the chance to contest the witness-affidavits submitted by Plaintiff "because the affidavits were never brought up by Plaintiff or the Magistrate Judge during the Pavey-hearing until the very last minute, at which point the Magistrate Judge indicated to Plaintiff he would consider the affidavits along with the other evidence." (Doc. 128, p. 5) Again, the Def.'s seek to both

gloss over the whole context in which the affidavits came under the Court's consideration, and to retroactively misconstrue & misrepresent the reality of the sequence of events at the hearing, in order to paint the picture that they were taken completely unawares by the Court's consideration of the witness-affidavits and thereafter had no chance to dispute such evidence.

First and foremost, the witness-affidavits were submitted by Plaintiff in his response in opposition to Def.'s summary judgment motion, on March 13, 2018 — 5 months before the Pavey hearing; thus, their existence, content and relevance were certainly of no suprise to Def.'s. More importantly, it is clear that the Def.'s at least informed Strubberg of the allegations concerning him (if not outright coached him as to what testimony to give — as discussed further below), without Plaintiff ever being present, as evidenced by his affidavit wherein he knew exactly what issues to address and dispute. Yet, although Strubberg's affidavit was written 2 months after Plaintiff's witnesses' affidavits were filed, the Def.'s never had him specifically dispute those witness accounts in his affidavit, which Def.'s knew existed. (Doc. 98-1)

Second, any insinuation by Def.'s that they had no idea that the Magistrate Judge "would consider the affidavits along with the other evidence", is disingenuous and unsupported by both the law and the record in this case. Fed. R. Civ. P. 56(c)

(stating that while "[t]he court need consider only the _cited_ mat-
-erials... it _may_ consider other materials in the _record_." *Emphasis
added*) The counsels for the Def.'s are well-trained attorneys
who clearly knew the law pertaining to summary judgment. In
this case, the witness-affidavits were both _cited_ in Plaintiff's
Response to Def.'s summary judgment motion, and was therefore
entered into the record. Moreover, leading up to the Pavey hearing,
Plaintiff himself made much ado about not being able to have his
witnesses physically present at the hearing, which led to a string
of motions and orders being filed between himself and the Magis-
-trate Judge. (Docs. 103, 107, and 110) In his order denying Plain-
-tiff's motion, the Magistrate Judge — in apparent reference to
Rule 56(c) — specifically stated and made clear that be-
-cause the "signed affidavits" were "submitted as part of
(Plaintiff's) response" that they constituted "evidence" which the
Court was allowed to consider and therefore it did "not appear
those witnesses need to be present for the hearing." (Doc. 110)
*Notably, at no time during this legal commotion regarding said
witnesses & affidavits, did the Def.'s ever interject about the
issue (presumably because they thought it would be to their bene-
-fit that Plaintiff's witnesses would not be physically present, un-
-like their own witness, Sgt. Strubberg); nor did Def.'s ever seek
to file another supplement to their motion (as with Strubberg's orig-
-inal affidavit) in order to specifically have Strubberg specifically
dispute/address the witnesses' accounts (since Def.'s were supplying
him with information anyway). *Alternatively, and pursuant to _SDIL-_

LR 7.1, the Def.'s could have filed a reply or supplemental brief to address the affidavits under the "exceptional circum-stance" of such witness-affidavits only being introduced into the record after their motion for summary judgment was filed and to therefore have the chance to dispute or address the affi-davits so as not to suffer any prejudice that would result from allowing them to go uncontested. In any case, each of Def.'s failures to utilize any of the above-described avenues to address the witness-affidavits, was a willfull and conscious decision by Def.'s to proceed without doing such. For the Court to now acc-ept Def.'s argument, without them providing any explanation as to why they did not pursue any avenue afforded to them by both the Fed.R.Civ.P & SDIL-LR, would essentially allow them to benefit from a natural (yet unspoken) presumption that they were ignorant of such rules and procedures, although Def.'s counsel were veteran attorneys, who have not pled such ignorance

Furthermore, Def.'s scenario-excuse that their "reason for" having "provided no reason for the Court to disregard the affidavits" was because the affidavits weren't "brought up...until the very last minute"—an excuse meant to suggest that Def.'s never had a chance afterward to speak on the subject or to further exam-ine Strubberg — is simply false and not grounded in the reality of the sequence of events at the hearing. At the time at which the Magistrate Judge advised both parties that it would con-sider the affidavits along with the other evidence, Sgt. Strubberg

was still on the witness stand — yet Def.'s counsel remained silent. Plaintiff then re-raised the issue in order to unequivocally confirm that the witness affidavits would be considered — yet Def.'s counsel remained silent (Strubberg was still on the stand). Def.'s counsel never expressed any type of dismay or surprise that such consideration would be given by the Court and never sought to object, interject, or to request that they be allowed to further examine Strubberg on the matter. Moreover, even after Strubberg left the stand, yet was still in attendance in the Courtroom, he was reminded by the Court that he was still under oath and was asked about another matter — yet Def.'s counsel remained silent (although the Judge, who had just questioned Strubberg from his seat in attendance, would have surely allowed Def.'s to do the same). Finally, even after all of this had transpired, the Magistrate Judge gave both Plaintiff and Def.'s counsel a final opportunity to speak their piece — an opportunity which Def.'s counsel, again, used to not address or mention the witness-affidavits in any way whatsoever or to request that they be allowed to further examine Strubberg on the issue. Again, each of these failures were conscious decisions not to address or mention the affidavits and the Def.'s narrative that the Magistrate Judge simply mentioned consideration of the affidavits and then immediately adjourned the hearing, is false and not supported by the record.* The District Court should be extremely wary of dis-

-turbing or reversing the Report to entertain the false excuse by Def.'s counsel and thereby reward and encourage such deliberate and strategic sandbagging by Def.'s, as it is not inconceivable that they (trained lawyers) intentionally failed to address the affidavits as a tactical sandbag-safety net that they could later use to take a second 'bite' at the proverbial apple', via objection, in the event that the Magistrate Judge's Report was unfavorable to them.

Finally, there are 2 logical and contradictory discrepancies in the above-referenced objection-argument of Def.'s. First, after noting that the "Magistrate Judge" indicated that the Defendants provided no reason for the Court to disregard the affidavits", the Def.'s went on to explain the "reason for this" — thus, they clearly admit and concede that they did not dispute or otherwise address the witness-affidavits. Yet, the Def.'s then go on to argue that the affidavits were "not relevant" or "related" to Plaintiff's position, and were basically immaterial. (Doc 128, pp. 5-6) Regarding summary judgment, the Fed. R. Civ. P., Rule 56 required Def.'s to "show that there [was] no genuine dispute as to any material fact." ("Emphasis Added") Thus, consistent with Plaintiff's above-stated position, it follows as a matter of logic and by Def.'s own admission, that the real reason that Def.'s counsel did not dispute the witness-affidavits is because they (admittedly) believed them to be irrelevant and immaterial. Yet, Def.'s should not be allowed to indirectly

use their own miscalculation of evidence as a basis for an ob-
-jection. Secondly, after making the above-referenced concession
that they failed to address/dispute the witness-affidavits,
the Def.'s counsel then turn around and directly contradict
themselves by arguing that the Magistrate Judge made an
"erroneous finding that defendants were not contesting the
affidavits" because "defendants presented contrary evidence"
in the form of Strubberg's denial of ever making such rep-
-resentations to Plaintiff. (Doc. 128, pp 6-7) This later argument
directly contradicts the earlier admission: both cannot be true.
Such an approach clearly demonstrates the willingness of Def.'s
to say anything and everything to create an objection, even if
that means turning on a dime' and taking a directly contra-
-dictory position within the exact same argument, and it further
seeks to play upon this Honorable Court's intelligence and
comprehension. *Here, Def.'s have simultaneously argued
(1) that they did not dispute the affidavits because they were
not given a chance (the latter of which is false), (2) the affid-
-avits were not relevant (and thus, not material), and (3)
then, they did in-fact dispute the affidavits (and thus, con-
-tested evidence which they deemed to be irrelevant, and in contra-
-diction of their former admission of failing to dispute the affidavits)
— a perfect tri-fecta of incoherent and rambling contradictions.
However, assuming arguendo that Strubberg's general denial —
without any specific reference or mention of the factual scenarios
in the witness-affidavits or of the affiants themselves — could

be construed as some sort of contestation of the affidavits, such an unspecific & overly-generalized denial could hardly constitute the "_properly address[ing]_" of the affiants' factual assertions, contemplated by the _Fed. R. Civ. P. Rule 56(e)._ (_Id_)("If a party fails... to _properly_ address another party's assertion of fact...")("_Emphasis added_") To hold that it does would turn the standard for evidence, factual dispute, and burdens of proof upon their head, and reduce litigation of summary judgment motions to games of shadows and innuendo. Yet, where such a generalized denial by Strubberg did not "properly address" the witness-affidavits, pursuant to Rule 56(e), the Magistrate Judge had the discretion to "consider the fact undisputed for purposes of the motion." _Fed. R. Civ. P. 56(e)_ The Magistrate Judge's Report should not now be subject to challenge for having exercised that discretion in a manner consistent with the procedural rules.* Yet, even if the District Court should find that such a general denial by Strubberg should have been extended to apply to the affidavits, this would, at _best_, entitle the Def.'s to _only_ have the matter recommitted to the Magistrate Judge with instructions to consider it as so — especially where Def.'s suggest no other basis on which they would have the affiants' accounts disputed, and where it is clear, based on his prior testimony & affidavit, that Strubberg's only possible response to the witnesses' affidavits would be only another blanket denial of the statements.

\* <u>Plaintiff's Version of Events is Not Contradictory ; Def.'s
Arguments are Immaterial to the Issue of Exhaustion,
Unsupported by any Actual Evidence, and/or was Not
Ever Raised by them in their Summary Judgment Motion
or the Pavey Evidentiary Hearing ; Evidence Presented
by Def.'s was Not Uncontrovertible & Def.'s Failed to
Address Facts which Plaintiff Properly Disputed</u>

In arguing that Plaintiff's version of events was contradictory,
the Def.'s actually fail to show any actual contradiction or even
2 facts alleged by Plaintiff which directly contradict each other
or could not both be true. Instead, the Def.'s embark on a ramb-
-ling tirade of asserting that Plaintiff attributed "fault belonging
to anyone and everyone except [himself]" in possessing & concealing
the pills provided to him by Def. Keen (notably, absolutely no fault
is attributed to Keen, who systematically narcotized Plaintiff for
6 consecutive months), and that Plaintiff's "game of hide and
seek should not be seen as <u>fault</u> on the [Def.'s] <u>in this matter</u>"
— a deceptive narrative of pure prejudicial rhetorical hyper-
-bole that seeks to deliberately and falsely insinuate that such
matters were the basis/reason for the Magistrate Judge's dec-
-ision & Report. (Doc. 128, pp. 3-4) (*Emphasis added) It clearly
was <u>not</u>. As much as Plaintiff disputes the Def.'s narrative and
could argue against such rhetoric, he will spare the District
Court the inconvenience of wading through such argument because
there are 2 insurmountable problems with Def.'s 'mud-slinging'

rant: (1) It has absolutely nothing to do with the facts and issue of whether or not Plaintiff exhausted his administrative rem-edies, and (2) It was never presented or argued in either Def.'s motion for summary judgment or at the Pavey hearing (precisely because they knew it was irrelevant, or because they only seek to desperately make such an 'argument' now that the Magistrate Judge's Report has been unfavorable to them). At best, such argumentative-rhetoric is an issue for liability on the claims at trial stage; at worst, it is a bad-faith narrative meant to improperly influence this Honorable Court against Plaintiff.

The Def.'s then argue that because Plaintiff alleged "that he was un-able to think straight" around the time that he wrote the initial Captain's Request complaint, that there "[i]t does not follow reason that an individual suffering from such alleged mental impairment would be able to formulate and submit a lengthy complaint form", and there--fore "either Plaintiff did not write the complaint at the time he states, or he was not as mentally impaired at the time as he alleges" and that "[n]either explanation makes Plaintiff very credible" and "[b]oth of these explanations would result in a ruling in favor of Wexford Def-endants." (Doc. 128, pp 3-4) ("Emphasis Added") Here, the Def.'s have manip-ulatively taken a vague factual detail and non-medical term (i.e., 'straight'), and drawn such a conclusory analysis from it in order to support an even more conclusory assertion, that their narrative more closely re-sembles a conspiracy theory than a legal argument. For example, the Def.'s have quoted Plaintiff's statement that he could not think

"straight" — a non-medical term whose meaning could vary from person to person and could not be ascertained without more definitive explanation — to then infer "such" a degree of "mental impairment" whereby they then question Plaintiff's 'ability' (i.e., mental capacity) to have written what they deem "a lengthy complaint." Yet, the Def.'s (who never conducted any limited discovery on the issue of exhaustion and therefore never developed any particular facts on their 'argument') do not know or set out fact to show: (1) exactly what medications (including strength, quantity, or combination) Plaintiff had last taken, (2) when he had last taken them, (3) exactly what effects such medications would have had on his mental capacity & cognitive ability to write a complaint, or (4) how long it took Plaintiff to write the complaint in the first place. Furthermore, and again, Def.'s never raised this so-called 'argument' in either their motion or during the hearing. Thus, not only does Def.'s counsel continuously seek to play 'Monday-morning quaterback', but he also seeks to invoke his imaginary degree in pseudo-medicine and psychoanalysis to make a complete speculation about Plaintiff's mental capacity & credibility, so as to conclusively assert that "both... explanations" (which they have manifested out of thin air and no factual development) would result in a ruling favorable to them. Aside from the fact that their 'argument' is perfunctory and relies on undeveloped 'facts'; contrary to Def.'s seeming point of view, the Magistrate Judge had absolutely no obligation to scan the record to create such a theory or 'argument' for them, and thus, such 'argument' should be rejected or considered waived by this Court. See Baxter v.

<u>Vigo County School Corp.</u>, 26 F.3d 728, 733 (7th Cir. 1994)(stating "Conclusory assertions cannot take the place of analysis. It is not [the Court's] task to construct the parties' arguments for them."); See also <u>U.S. v. Berkowitz, 927 F.2d 1376, 1384(7th Cir. 1991)</u> (stating that the Courts "repeatedly have made clear that perfunctory and undeveloped arguments... are waived.")

Yet, this attitude is prominent throughout all of Def.'s arguments and is the underlying gist of all their objections — that <u>everything they present</u>, (including pure argument) or <u>didn't</u> present, is uncontrovertible & unquest-ionable proof, and that the Magistrate Judge's duty was to comb through the record (even to find issues they did not raise or dispute), accept their 'evidence' as absolute, and to plug such 'evidence' into a theory most fav-orable to them. Yet, that is completely untrue, as Plaintiff meaningfully disputed every material fact and evidence Def.'s put forth, and the Magistrate Judge was actually required by law to construe all facts and reasonable inferences in favor of Plaintiff. For example:

\* By their reference to the "never-before-seen" Captain's Request comp-laints of Plaintiff, Def.'s seek to argue that because the "forms are un-marked by any jail personnel", such is "proof that Plaintiff never sub-mitted the forms". (<u>Doc. 128, pp.3-5</u>) Yet, Plaintiff submitted the "never--before-seen" complaints so as to comply with the the the orders of the Court in its Scheduling Order. (<u>Doc. 60, p. 4</u>)("Plaintiff shall serve upon Def--endants copies of all documents in his possession relevant to the issue of exhaustion.") Thus, Def.'s "never-before-seen" language is an attempt to

portray their own grievance record as indisputable, However, Plaintiff not only testified that Strubberg returned the complaints to ~~hits~~ him, but also specifically disputed the accuracy & integrity of Def.'s records. (Doc. 88, pp. 17-20) Particularly, among other discrepancies, Plaintiff showed (1) that Def.'s record failed to contain several other complaints that had even been mentioned in a subsequent complaint that ~~was~~ in Def.'s record, and (2) that Def.'s record also omitted several complaints Plaintiff filed in a previous action against county jail author-ities where they did not dispute their existence. Most importantly, ~~th~~ during the hearing, the Magistrate Judge himself specifically noted & mentioned the first above-referenced discrepancy with respect to Def.'s grievance records. Yet at no point did Def.'s even attempt to explain or dispute, or account for, the discrepancy; nor did they ever present any evidence as to whether a complaint that had been rejected as premature would have had a staff signature or would have even been included in the grievance record in the first place (as it had been rejected as premature). Thus, Def.'s constantly try to sub-stitute pure argument for "proof." There actually was no "proof" of their theory, ~~instedd~~ instead there was (1) Plaintiff's dispute of their record; (2) the Court's own notice / mention of the dispute and discrepancy; (3) and a complete failure by Def.'s to explain the discrepancy or respond to Plaintiff's dispute. Def.'s entire argument is based on unsubstantiated presumption. Their failure to address the discrepancy, alone, is reason to deny their motion. Lodato v. Ortiz, 314 F.Supp 2d 379, 385 (D.N.J. 2004) (denying summary judgment where defendants said they had no record of plaintiff's grievance, but

they also had no record of other grievances which were undisputedly filed)

As to Strubberg's testimony, it was indicative of having been coached and crafted by counsel beforehand, as his entire testimony was (1) a general denial of everything, and (2) a failure to recall anything that was asked by Plaintiff. Such testimony is the technique of "stonewalling." Notably, Def.'s counsel argued (in Strubberg's presence) the date the investigation supposedly concluded, before Strubberg so testified. Yet, the issue is what Strubberg told Plaintiff, not when the investigation concluded. Finally, the Court was not required "to explain why he found Sgt. Strubberg a less credible witness. (Doc. 128, p. 5)

Finally, contrary to Def.'s false claim, the Magistrate Judge did not say the Captain's Request forms were unavailable to Plaintiff. Instead, he said Plaintiff was "denied ... access to the grievance process." (See Doc. 128, p. 8; Doc. 127, pp. 8-9)

*  WHEREFORE, Plaintiff prays that this Honorable Court accept the Magistrate Judge's Report (Doc. 127) and rule in Plaintiff's favor, and for such other relief deemed just and proper.

s/ Dallas McIntosh

Dallas McIntosh, #B-85114
5835 State Route 154
Pinckneyville, IL 62274-3410

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2018, I placed the foregoing document into the internal mail system at Pickneyville Correctional Center, properly marked, to be forwarded to the law library and electronically filed, using the CM/ECF system, which, in turn, will send a notification & copy of such filing to all counsels of record.

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Pickneyville, Illinois on September 26, 2018.

s/ Dallas McIntosh

Dallas McIntosh, B-85114



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

### ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

*Dallas McIntosh*
Name

*B-85114*
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?     Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition?   Yes or (No)

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?   (Yes) or No

    If yes, please list case number:   *17-cv-00103-DGW-JPG*

    If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted:   *21*   (*Pl.'s Response to Def.'s Obj. to Court's Report & Recommend.*)

5. If multiple documents, please identify each document and the number of pages for each document.  For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

Name of Document
*Plaintoff's Response to Defendents' Wexford...*

Number of Pages
*21*

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.  Discovery materials sent to the Court will be returned unfiled.