# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

DALLAS MCINTOSH,

    Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., *et al.*,

    Defendants.

Case No. 3:17-cv-00103-JPG-DGW

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

    Plaintiff Dallas McIntosh claims that the defendants violated his Eighth Amendment rights by failing to protect him from a suicide attempt, getting him addicted to prescription-strength painkillers, and—in the case of Wexford Health Sources—having a policy of providing inadequate suicide prevention training, among other policies. All of the defendants moved for summary judgment on the grounds that McIntosh failed to exhaust his administrative remedies before filing suit. (ECF No. 61, 69.) Magistrate Judge Donald G. Wilkerson has now issued a Report & Recommendation that advises this Court to deny those motions. (ECF No. 127.) The Court respectfully disagrees, **REJECTS** the Report & Recommendation, and **GRANTS** the defendants' motions for summary judgment.

    McIntosh alleges that while he was a patient in the infirmary at the St. Clair County Jail from February through August 2013, defendant Nancy Keen—a nurse at the jail—gave McIntosh a number of pills under the table: painkillers, opioids, sleeping pills, and medication for anxiety and depression. (Compl. p. 8, ECF No. 1.) McIntosh says that Keen gave him large bundles of pills at a time so that they would last between her shifts, and that he eventually became addicted to the medications after remaining in a perpetual drug-induced state. (*Id.*) But on August 4, 2013,

1

following a shakedown at the infirmary, investigators discovered 55 prescription pills in McIntosh's possession—and another nurse at the jail, defendant Barbara Rodriguez, confirmed that they did not prescribe McIntosh any of them. (*Id.* at 9–10.) So the jail banished McIntosh to punitive segregation that same day—but they allowed McIntosh to take his mattress from the infirmary with him, which contained even more hidden pills. (*Id.* at 11.)

Once McIntosh got to segregation, he says that he became depressed, took more of the pills that were hidden in his mattress, and tried to hang himself using a bedsheet as a rope. (*Id.* at 11) The suicide attempt failed when the sheet came loose, causing McIntosh to fall, hit his head on the floor, and lose consciousness for several hours. McIntosh alleges that the pills were responsible for his suicide attempt because he had never taken any steps towards suicide before he became addicted to them. (*Id.* at 12.) So he sued the defendants in this Court: the two nurses for being deliberately indifferent to his medical needs and Wexford for maintaining an unconstitutional policy or practice of failing to provide inadequate suicide prevention and prescription training to employees—all in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause.

But before the merits of McIntosh's claims come into play, the Court must determine whether he exhausted his administrative remedies before filing suit: a well-established requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). In order to comply, McIntosh must have "file[d] complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). And it is the defendants' burden here to prove that McIntosh did not do so. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Here, the St. Clair County Jail requires inmates to submit a "Captain's Request"—a written document that details the inmate's complaints—to the relevant shift supervisor within 24 hours of

2

the incident in-question in order to start the administrative remedies process. (ECF No. 62-1, p. 9.) McIntosh says that he gave his Captain's Request—which identified a nurse as the supplier of the pills—to the shift supervisor on August 4th, 2013: immediately after the jail transferred him to punitive segregation and shortly before his suicide attempt. (ECF No. 1, p. 9, ECF No. 88, p. 3, ECF No. 91.) But McIntosh says he was unable to continue on with the next step in the grievance process—the formal grievance—because he never received a response to his Captain's Request. (ECF No. 88, p. 6.) Specifically, McIntosh claims that on August 6th, 2013, Sergeant Steve Strubberg escorted McIntosh to Stubberg's office at the jail; told him that he was under criminal investigation because of the pills; handed McIntosh's Captain's Request back to him; and told McIntosh that he would need to wait for the investigation to end before he could start the grievance process. (*Id.* at 8.) The defendants tell a different story: they say that McIntosh never submitted a Captain's Request at all—implying that the one McIntosh provided in this case is forged. And Strubberg testified that (1) he never saw this so-called Captain's Request, and (2) he never told McIntosh that he could not start the grievance process until the investigation was over. (ECF No. 133 at 16–26.)

Pursuant to the Seventh Circuit's instructions in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing to determine whether McIntosh exhausted his administrative remedies. He now recommends that this Court deny the defendants' motions for summary judgment for three reasons: (1) McIntosh's claims are bolstered by affidavits from other prisoners, which state that they overheard Strubberg make the alleged statements to McIntosh (ECF Nos. 25, 26); (2) McIntosh has entered into the record the supposed Captain's Request that Strubberg gave back to him, and the "lack of signatures by administrators supports McIntosh's claim the Captains Request was returned to him as premature"; and (3) the reasonable

inference "more favorable to McIntosh is the possibility that the jail simply returned the grievance to him without bothering to respond to it." (ECF No. 127, p. 8.) Two of the defendants have objected to the Report, so this Court has conducted a *de novo* review of the issues. FED. R. CIV. P. 72(b)(3); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). And, as always with motions for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party—here, McIntosh—and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008).

The defendants have carried their burden here, and neither McIntosh nor the Report make any compelling arguments to the contrary. First, these affidavits from other prisoners—which the Report relied on—are textbook examples of impermissible hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004) (quoting *United States v. Linwood*, 142 F.3d 418, 424–25 (7th Cir.1998)); FED. R. EVID. 801(c). In both affidavits, the prisoners swear that they overheard Strubberg tell McIntosh in December 2014 that McIntosh may not start the grievance process until the investigation is over. But McIntosh offered these affidavits for the truth of the matter they assert: what Sergeant Strubberg allegedly told McIntosh. A " party may not rely on inadmissible hearsay to avoid summary judgment," *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011), so the Court must disregard the affidavits entirely. And even if the affidavits are not hearsay, they are not credible anyways: they both state that Strubberg made his statement in December 2014, even though the evidence indicates that the investigation closed in October 2014. (ECF No. 133, p. 12.)

Second, although the Court must view the evidence here in the light most favorable to McIntosh, that does not mean that it must automatically take McIntosh's allegations as true—which the Report has done. McIntosh entered the alleged Captain's Request into the record (ECF No. 91), but the evidence in this case—including that from the evidentiary hearing, the transcripts from which this Court has reviewed (ECF No. 133)—supports the defendants' allegations that McIntosh forged the Captain's Request at a later date. For example, the Captain's Request repeatedly states that a nurse was the source of the pills, and McIntosh allegedly gave the request to jail administrators in August 2013—but the jail did not conclude the investigation into the pills until October 2014. As the defendants point out, the investigation into the source of McIntosh's pills would not have taken 14 months if McIntosh actually turned in his Captain's Request when he said he did. (ECF No. 128, p. 7.) Moreover, as the defendants point out in their objection, the Captain's Request is an eloquently-written request for monetary damages, but "[i]t does not follow reason that an individual suffering from [the severe mental impairments alleged in the complaint, including being in a mental haze from overdosing on pills] would be able to formulate and submit a lengthy [grievance] form requesting monetary damages." (*Id.* at p. 3.) The Court agrees with the defendants that either McIntosh did not write the grievance at the time he alleges or he was not as mentally impaired as he alleges—both of which hurt McIntosh's credibility here dramatically. And finally, the Court rejects the Report's argument that the "lack of signatures by administrators supports McIntosh's claim the Captains Request was returned to him as premature." The lack of signatures only shows that both sides of the story here are plausible—but that does not mean that you immediately take the plaintiff's side as true.

Third, even though Strubberg testified at the *Pavey* hearing, the Report is devoid of any analysis of whether Strubberg and his story are credible. After a *de novo* review of the transcript

5

and the record in this case, however, it is plainly apparent that Strubberg and his story are much more credible than McIntosh and his. Strubberg presented a coherent timeline and recollection of the events in question, denied ever seeing the Captain's Request—which identifies a nurse as the source of the contraband—and denied ever telling McIntosh that he must wait until the investigation was over until he could submit a Captain's Request. (ECF No. 133 at 16–26.) McIntosh's position, however, is riddled with inconsistencies—particularly for the reasons stated in the paragraph above.

So for the foregoing reasons, the Court finds that the defendants have carried their burden in proving that Dallas McIntosh did not exhaust his administrative remedies before filing suit—specifically because McIntosh never submitted a timely Captain's Request to the St. Clair County Jail. The Court accordingly **REJECTS** the Report (ECF No. 127), **GRANTS** the defendants' motions for summary judgment (ECF Nos. 61, 69), **FINDS AS MOOT** any other pending motions, **DISMISSES** this case **WITHOUT PREJUDICE** for McIntosh's failure to exhaust, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: NOVEMBER 14, 2018**

                                          **s/ *J. Phil Gilbert***
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**